Roger L. **BOARMAN**, Appellant (Defendant below),

v.

**STATE of Indiana, Appellee** (Plaintiff below).

No. 985S364.

Supreme Court of Indiana.

June 23, 1987.

John F. Davis, Mary Jane Humphrey, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant, Roger L. Boarman, was convicted by a Vanderburgh County jury of possession of cocaine, a class C felony. Thereafter, the same jury found Boarman to be a habitual criminal offender. The trial court sentenced Boarman to eight (8) years for possession, enhanced by thirty (30) years for being a habitual offender. In this direct appeal, Boarman raises the following issues for our consideration:

1. sufficiency of the evidence supporting the possession conviction;

2. error in the habitual offender verdict form;

3. error in asking Boarman preliminary question, and taking fingerprints, without giving him his *Miranda* warnings;

4. error in admitting testimony concerning State's Exhibit 8;

5. error in admitting expert testimony concerning a fingerprint comparison; and,

6. error in admitting into evidence documents which were not in continuous control of the county clerk.

The facts supporting the jury's determination are as follows. On July 17, 1984, Evansville police officers Clinton Coomer and Robert Diekhoff were partners on the second shift. The officers stopped Carol Shutt and issued her a citation for improper registration of her car. Ms. Shutt sat on the passenger side in the rear of the squad car. She had her purse with her, but was not searched by the officers. The back seat of the squad car was not checked after Ms. Shutt was released. At approximately 8:00 p.m., Appellant Boarman was arrested for a traffic infraction. Officer Coomer searched Boarman by "patting" him down. Coomer handcuffed Boarman and placed him on the passenger side in the rear of the squad car. Boarman, who was handcuffed with his hands behind his back, shifted up and down in the back seat of the car. He complained the handcuffs were hurting him. Boarman was then taken to the police station and booked.

At the end of their shift, Officer Diekhoff pulled out the back seat of the squad car and found a vial and two bags containing a white powdery substance later determined to be cocaine.

At trial, both officers testified they had searched the back seat of the squad car before they began their shift. Each testified that Ms. Shutt and Boarman were the only two placed in the back seat of the car during their shift, and the car was locked at all times when unoccupied. Ms. Shutt testified she did not plant the cocaine in the squad car. Officer Coomer testified he did not notice Ms. Shutt make any unusual or excessive movements while she was detained in the car on the night in question. Coomer was of the opinion that had Boarman's hands been hurting him due to the handcuffs, Boarman would not have moved in an up and down fashion as that would have caused even more pain from the hand-

cuffs. Based on this evidence, the jury concluded beyond a reasonable doubt that Boarman possessed the cocaine found in the police squad car.

I

Boarman first argues his conviction for possession is not supported by sufficient evidence. Specifically, he claims another person had access to the back seat of the squad car, and that person was neither searched nor handcuffed. Boarman, on the other hand, was searched and had his hands handcuffed behind his back. He also argues that the police picked up the contraband containers with their bare hands, thereby destroying any fingerprints which might have identified the owner. Finally, Boarman argues the State failed to prove he was in constructive possession of the cocaine.

When sufficiency of the evidence supporting a criminal conviction is challenged on appeal, we have a very narrow scope of review. We neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we look at the evidence most favorable to the State together with all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value from which the jury could have reasonably inferred guilt beyond a reasonable doubt, the conviction will be affirmed. *Arthur v. State* (1986), Ind., 499 N.E.2d 746, 747; *McMurry v. State* (1984), 467 N.E.2d 1202, 1204.

■ Here, Boarman is merely asking us to reweigh the evidence and judge the credibility of the witnesses which we will not do. The jury was presented with the facts set out in the beginning of this opinion. They determined that between the two persons who had access to the back seat of the squad car, Boarman was the one who dropped the cocaine there. Their determination is supported by the evidence. The car was searched prior to either person being placed in the car. Ms. Shutt testified she did not place the cocaine there, and the jury credited her testimony. There also was evidence Ms. Shutt did not act suspi-

ciously while in the car. Boarman, however, moved up and down in a suspicious fashion while in the car. The reasonable inference to be drawn from this is that Boarman placed the cocaine in the car in an attempt to avoid its being discovered on his person at the police station.

Boarman's claim that the police destroyed fingerprints on the contraband containers is based on mere speculation. There was no evidence the containers had fingerprints on them when discovered. Finally, constructive possession was not an issue in this case. The circumstances of this case, and the evidence presented at trial, support the jury's finding that Boarman was in actual possession of the cocaine at the time he was arrested. We find sufficient evidence to support the conviction.

## II

■ In the habitual offender portion of Boarman's trial, the State introduced evidence that he had three prior unrelated felony convictions. Boarman concedes the State may plead and prove more than the statutorily required two prior felonies as such is merely surplusage. *See Dudley v. State* (1985), Ind., 480 N.E.2d 881, 901; *Minneman v. State* (1983), Ind., 441 N.E.2d 673, *cert. denied* 461 U.S. 933, 103 S.Ct. 2099, 77 L.Ed.2d 307. Boarman contends however, that such surplusage is permissible only if a special verdict form is used which indicates which two felonies the jury relied on. For authority Boarman cites *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339; and *Hudson v. State* (1983), Ind., 443 N.E.2d 834.

In *Miller,* the defendant was alleged to have committed four prior unrelated felonies. We found the defendant was improperly charged with two of the felonies because he had not yet been convicted of them at the time the principal offense was committed. *Miller,* 275 Ind. at 460, 417 N.E.2d at 342. We then questioned the prosecutorial wisdom of charging surplus felonies without utilizing a special verdict form. *Id.* Our concern is that if one of the prior felonies is set aside, a general

verdict would not tell us which two felonies the jury relied on in making their habitual offender determination. However, we in no way implied it is impermissible to use a general verdict when surplus felonies are alleged.

In *Hudson,* we again expressed our concern over the utilization of a general verdict when more than two prior felonies are alleged. We held that a general verdict does not permit a reviewing court to determine which two of three or more prior felonies the jury found. Therefore, any error with respect to proof of the alleged prior convictions necessitated a retrial of the entire habitual offender charge. *Hudson,* 443 N.E.2d at 837. Again, we in no way implied it is impermissible to use a general verdict when surplus prior convictions are alleged. It is merely unwise to do so.

Here, Boarman has failed to show that any one of his three prior convictions is unsubstantiated. The record indicates he had three prior felony convictions; armed robbery in 1974, entering to commit a felony in 1975, and theft over $100 in 1978. Therefore, we find no error in the State's use of a general verdict form here.

## III

During Boarman's booking, he was asked to give his name, address, social security number, date of birth, and other identification information. He was also fingerprinted. Boarman claims he was not given a *Miranda* advisement prior to the questioning and fingerprinting. He argues the information he gave to the police was used to obtain evidence which the State presented to establish the habitual offender charge. Boarman argues he should have been advised of his *Miranda* safeguards prior to the questioning and fingerprinting, and because this did not happen, the evidence used against him was inadmissible. We disagree.

■ The procedural safeguards of *Miranda* apply only to custodial interrogation. *Bugg v. State* (1978), 267 Ind. 614, 617, 372 N.E.2d 1156, 1158. Not every question a police officer asks one in custo-

dy amounts to an "interrogation." *Johnson v. State* (1978), 269 Ind. 370, 377, 380 N.E.2d 1236, 1240. If it does not appear that the purpose of the question is to obtain a confession from the suspect, *Miranda* is not triggered and it is not necessary that the suspect first be advised of his rights. *Id.* at 377, 380 N.E.2d at 1240.

■ We have held that a police officer may ask routine identification information required for the booking procedure without giving *Miranda* warnings. *Hatcher v. State* (1980), 274 Ind. 230, 232, 410 N.E.2d 1187, 1189, *citing Holt v. State* (1978), 178 Ind.App. 631, 383 N.E.2d 467; *Pulliam v. State* (1976), 264 Ind. 382, 388, 345 N.E.2d 229, 236. Here, the police officer asked Boarman basic booking procedure questions. These questions were not used to elicit a confession from Boarman. Thus, the information the police gained was not in violation of *Miranda* and was admissible at trial.

■ Concerning Boarman's claim that his being fingerprinted during the booking violated *Miranda*, we have held that the right against self-incrimination does not protect a suspect from compulsory submission to purely physical tests such as fingerprinting. *Frances v. State* (1974), 262 Ind. 353, 358, 316 N.E.2d 364, 366. Since the right against self-incrimination does not protect one from compulsory submission to physical tests such as fingerprinting, *Miranda* warnings do not need to be given before such tests are administered. There is no error here.

### IV

Next, Boarman contends the trial court erred in admitting State's Exhibit 8, a fingerprint card of one "Robert Leo Boarman." The card was signed by a "Robert Boarman." The officer who testified as to the authenticity of the exhibit was not the officer who actually took the subject's fingerprints. Thus, Boarman contends the testifying officer did not know the identity of the person whose fingerprints were represented on the exhibit.

■ It appears from Boarman's brief that he is claiming State's Exhibit 8 is hearsay. However, he did not object to the admission of the exhibit as hearsay. Rather, he objected that the fingerprints were taken in violation of his *Miranda* rights. Failure to make a specific objection at trial waives our consideration of error on appeal. *Goodman v. State* (1985), Ind., 479 N.E.2d 513, 514.

■ Nevertheless, the document in question here fits within the business records exception to the hearsay rule. The sponsor of an exhibit need not have personally made it, filed it, or have firsthand knowledge of the transaction represented by it. *Smith v. State* (1985), Ind., 477 N.E.2d 857, 866. The sponsor need only show that the exhibit was part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so, and who had personal knowledge of the transaction represented at the time of entry. *Id.; Belcher v. State* (1983), Ind., 453 N.E.2d 214, 219. It appears that these requirements were met here. Attached to the exhibit is a statement of certification from the records keeper of the Evansville Police Department. If any foundation requirements for the admission of the exhibit were missing, Boarman's failure to object waives any error. *Goodman*, 479 N.E.2d at 515.

### V

Officer Egan testified about a fingerprint comparison he made between State's Exhibit 8 and State's Exhibit 32. Boarman contends the prints in Exhibit 32 were so faint it was impossible for Egan to make any comparison, and, therefore, the opinion testimony was inadmissible.

■ The question of admissibility of any particular evidence is within the trial court's discretion. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 88. The determination of whether an expert witness is qualified to give an opinion is also within the trial court's discretion. *Rowan v. State* (1982), Ind., 431 N.E.2d 805, 816. Any alleged lack of the evidence's reliability can be brought out on cross-examina-

tion. *Id.* As long as the expert is otherwise qualified, the question of reliability goes to the weight of the evidence and not its competency. *Id.*

 We agree the fingerprints contained on page 3 of Exhibit 32 are faint. However, the record contains the following:

"Q. And are they (fingerprints contained in State's exhibit 32) dated January 22, 1974, of sufficient quality to enable you to make a comparison or at least the recommended standard number of fingerprints?

A. It was difficult, but they were there and I found them."

Officer Egan went on to testify that he was able to make a 12 point comparison on more than one digit contained in the exhibit. Boarman does not challenge Officer Egan's qualifications to give an opinion. We think the jury was in the best position to determine the reliability of the expert's testimony, and find no abuse of the trial court's discretion in allowing such testimony into evidence.

## VI

 Finally, Boarman claims the trial court erred in admitting State's Exhibits 15 and 16. These exhibits, which dated back to 1973, had been stored in the basement of the Vanderburgh Court House. Boarman contends that because the exhibits were not in the continuous control of the County Clerk, they did not qualify for the business records exception to the hearsay rule. Boarman's contention has no merit.

The documents in question were certified by the Clerk of Vanderburgh County. They were offered by a deputy of the Clerk's Office. She testified her duty was to take care of all court records of the Vanderburgh Circuit Court. These records therefore were admissible as public records. *Pointer v. State* (1986), Ind., 499 N.E.2d 1087, 1089; Ind. Code § 34–1–17–7 (Burns 1986). There is no error here.

The trial court is affirmed.

SHEPARD, C.J., DeBRULER and GIVAN, JJ., concur.

DICKSON, J., concurs in result without opinion.