David A. NEUHOFF, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–9806–CR–213.

Court of Appeals of Indiana.

April 9, 1999.

John D. Clouse, John P. Brinson, Evansville, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Chris Worden, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RUCKER, Judge

Appellant–Defendant David A. Neuhoff was charged with dealing in marijuana as a Class C felony. A jury found him guilty of the included offense of attempted dealing in marijuana, also a Class C felony. Neuhoff now appeals raising three issues for our review which we rephrase as: (1) did the trial court err in denying Neuhoff's motion to suppress the evidence, (2) was the trial court's instruction on attempted dealing in marijuana erroneous, and (3) was the evidence sufficient to sustain the conviction.

We affirm.

On June 10, 1997, postal inspectors in Texas intercepted a package being mailed from Brownsville, Texas to an address in Evansville, Indiana. The addressee was Robert Nelson. The inspectors were suspicious of the package because of its size, weight, and city of origin. When the package was presented to a drug sniffing dog in Texas, the dog alerted to the presence of drugs. The package was forwarded to Indiana and the Texas authorities notified Indiana postal inspector Steven Sadowitz. When the package arrived Sadowitz shook it and believed it contained narcotics. A trained dog from the Indianapolis Police Department sniffed the package and alerted to the presence of drugs. Thereafter Sadowitz sought and received a search warrant for the package, and as a result discovered therein over eleven pounds of marijuana.

Disguised as a mail carrier, Sadowitz delivered the package to the Evansville address.

The only person present at the time was Michelle Brown who ultimately gave the inspector the names of her roommates: Harmonie Culbertson and David Neuhoff. Sadowitz placed the package inside the door of the apartment. With Brown's cooperation, Sadowitz and a uniformed officer hid inside the apartment. When Neuhoff and Culbertson arrived, Neuhoff asked Brown when the package arrived and whether she had signed for it. Acting nervously and commenting that the police were watching, Neuhoff moved the package from its position inside the door and toward the middle of the room. Shortly thereafter Sadowitz and the uniformed officer revealed their presence and arrested both Neuhoff and Culbertson. The State charged Neuhoff with dealing in marijuana as a Class C felony. Prior to trial Neuhoff filed a motion to suppress which the trial court denied after a hearing. At trial the marijuana was introduced into evidence over Neuhoff's objection. Ultimately a jury convicted Neuhoff of the included offense of attempted dealing in marijuana as a Class C felony. This appeal followed.

## I.

Neuhoff first contends the trial court erred in denying his motion to suppress because there was insufficient probable cause for the issuance of the search warrant. According to Neuhoff the only justification for authorizing the search was the alert by the two dogs. Continuing, Neuhoff argues the affidavit in support of the search warrant was deficient because it did not specify the dogs' reliability as drug detectors.

We first observe that smell testing by a trained dog is not a search within the meaning of the Fourth Amendment. *Kenner v. State*, 703 N.E.2d.1122, 1125 (Ind.Ct.App. 1999), *reh'g denied; State v. Watkins*, 515 N.E.2d 1152, 1154–55 (Ind.Ct.App.1987). Rather, the alert of a trained dog can provide the probable cause necessary to obtain a search warrant. *Kenner*, 703 N.E.2d at

1125. In this case we disagree with Neuhoff's assertion that the probable cause affidavit was deficient because it did not specify the dogs' reliability. It is true there was nothing in the affidavit concerning the reliability of the Texas drug sniffing dog. However that is not true concerning the Indiana drug sniffing dog. We find sufficient the affiant's representation that the Indiana dog was recertified on June 6, 1997, by the Indianapolis Police Department as a Narcotic Detective Canine; that the dog has participated in approximately 250 searches both in the field and in training situations; that the dog and its handler are certified yearly by the Indianapolis Police Department as a Dog Handler and Narcotics Canine team; and that the dog and its handler have received specialized training in the detection of the odor of marijuana, cocaine, heroin, and methamphetamines. R. at 279.

The smell testing by the Indiana dog was sufficient in itself to support the issuance of the search warrant. However there was additional information in the affidavit to justify the warrant in this case. The package contained several indicia enumerated in the drug smuggling profile utilized by postal inspectors in determining the suspiciousness of parcels sent through the United States mail. The profile contains the following elements: 1) the source city is known for its illegal drug trade; 2) the package is an unusual size and shape; and 3) the return addressee is fictitious. *People v. May*, 886 P.2d 280, 282 n. 2 (Colo.1994).[1] In his affidavit supporting the issuance of a search warrant inspector Sadowitz represented that Brownsville, Texas, the package's origin, "is a major source city for narcotics in the United States." R. at 279. He also represented that the package's size of twelve inches by twelve inches by thirteen inches and weight of sixteen pounds contributed to its suspicious character. Although the return address did not appear fictitious, the alleged sender, Anthony Page, could not be located at the return address. Based on these circumstances, the package

---

1. Other indicators of contraband include heavily-taped packages, hand-written labels, unusual odor coming from packages, destination of parcel, and a nonexistent return address. *United States v. Martinez*, 869 F.Supp. 202, 203 n. 2 (S.D.N.Y.1994); *See also United States v. Scarborough*, 128 F.3d 1373, 1377 (10th Cir.1997); *Commonwealth v. Pinto*, 45 Mass.App.Ct. 790, 702 N.E.2d 32, 35 (1998).

was removed from shipment for investigation.

■ Probable cause has never been capable of precise definition, and its existence is fact sensitive to each case. *Figert v. State,* 686 N.E.2d 827, 830 (Ind.1997). When deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Jaggers v. State,* 687 N.E.2d 180, 181 (Ind. 1997) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), *trans. denied* ). On appeal we must decide whether there was a substantial basis for concluding the existence of probable cause. *Figert,* 686 N.E.2d at 830. "[S]ubstantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination" of probable cause. *Houser v. State,* 678 N.E.2d 95, 99 (Ind.1997). In the case before us there was sufficient probable cause for the issuance of the search warrant. Accordingly the trial court did not err in denying Neuhoff's motion to suppress and entering the marijuana into evidence over Neuhoff's objection.

## II.

■ Neuhoff next complains the trial court's jury instruction on attempted dealing in marijuana was erroneous. The instruction dictates in pertinent part:

[t]o convict the defendant of attempted Dealing in Marijuana, the state must have proved each one of the following elements:

The Defendant

1. acting with specific intent to commit Dealing in Marijuana by knowingly possessing marijuana in an amount over ten (10) pounds with the intent to deliver it;

2. did enter 930 Douglas Drive in Evansville, Indiana, to pick up a box containing more than ten (10) pounds of marijuana, and did physically move the box from one place to another.

3. which was conduct constituting a substantial step toward the commission of the intended crime of Dealing in Marijuana.

If the state failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant [not] guilty of the crime of attempted Dealing in Marijuana, a Class C felony.

R. at 238–39. Pointing to sections 2 and 3 Neuhoff contends the instruction is mandatory because it compelled the jury to return a guilty verdict should the jury find the existence of certain facts. More specifically Neuhoff argues that what constitutes a substantial step is a question for the jury to decide. The argument continues that here the trial court did not leave the matter to the jury, but rather instructed the jury on what constituted a substantial step.

■ A mandatory instruction is one which "attempt[s] to set up a factual situation directing the jury to a certain result." *Ajabu v. State,* 677 N.E.2d 1035, 1039 n. 3 (Ind.Ct. App.1997). Article I, § 19 of the Indiana Constitution provides "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts." In *Pritchard v. State,* 248 Ind. 566, 230 N.E.2d 416 (1967) the defendant challenged the following instruction:

The Court now instructs you that if you should find that [the defendant was] guilty of cruelty or neglect of [the victim] and that as a result of such cruelty or neglect beyond a reasonable doubt [the victim] did sicken, languish and die, *then you shall find such defendant guilty of involuntary manslaughter.*

*Id.* at 417 (emphasis in original). In finding this language to be erroneous, our supreme court held that a mandatory instruction which binds the minds and consciences of the jury to return a verdict of guilty upon finding certain facts, invades the constitutional province of the jury. *Id.* at 421.

■ We first observe that not only does the instruction in this case track the language of the Indiana Pattern Jury Instruc-

tions[2] but also we approved a similar instruction in *Taylor v. State,* 659 N.E.2d 1054, 1059 (Ind.Ct.App.1995), *trans. denied.*[3] In any event we do not read the instruction here as mandatory. An instruction given to the jury must be a correct statement of the law, must be applicable to the evidence adduced at trial, and must be relevant to issues the jury must decide in reaching its verdict. *Anderson v. State,* 653 N.E.2d 1048, 1051 (Ind.Ct.App.1995). The mere fact that instructions refer to evidence in criminal proceedings does not itself constitute error. *Wilson v. State,* 263 Ind. 469, 333 N.E.2d 755, 763 (1975). The instruction in this case represents a correct statement of the law, and was applicable to the evidence adduced at trial. That trial court did not abuse its discretion in giving the instruction.

### III.

■ Lastly, Neuhoff contends there was insufficient evidence to sustain the conviction because his actions did not exhibit the requisite intent nor constitute a substantial step toward maintaining control of the package. When reviewing a challenge to the sufficiency of evidence our standard of review is well settled. We neither reweigh evidence nor judge witness credibility. *Minter v. State,* 653 N.E.2d 1382, 1383 (Ind.1995). Rather, we examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom, and if there is substantial evidence to support the conviction, it will not be set aside. *Nunn v. State,* 601 N.E.2d 334, 338 (Ind.1992). The crime of Dealing in Marijuana, as a Class C felony, involves possession and the intent to deliver more than ten pounds of marijuana. Ind.

Code § 35–48–4–10. When a person attempts to deal in marijuana, he must act with the culpability required for commission of the crime and engage in conduct that constitutes a substantial step toward commission of the crime. Ind.Code § 35–41–5–1(a).

■ Intent involves a person's state of mind, and the fact finder "must infer its existence from surrounding circumstances when determining whether the requisite intent exists." *Goodner v. State,* 685 N.E.2d 1058, 1062 (Ind.1997). Here, the record shows Neuhoff was aware of the package's delivery and asked Brown when the package had been delivered and whether she signed for it. Neuhoff then moved the package around the room and paced nervously inside and outside the apartment because he thought the police were watching him. This evidence substantiates the inference that Neuhoff intended to possess the package but was apprehensive about opening the package because of the presence of law enforcement.

■ The evidence also demonstrates that Neuhoff engaged in a substantial step toward possessing the package. What constitutes a substantial step is dependent upon the facts of each case, but the requirement is a minimal one, often defined as any overt act in furtherance of the crime. *State v. Van Cleave,* 674 N.E.2d 1293, 1304 (Ind.1996). The determination of what constitutes a substantial step is left to the province of the jury. *Burdine v. State,* 646 N.E.2d 696, 699 (Ind.Ct.App.1995), *trans. denied.* As noted when Neuhoff arrived at the apartment he questioned Brown about the circumstances surrounding the package's delivery. He then moved the package around the living room of

---

2. In relevant part the pattern jury instruction reads as follows:

> To convict the Defendant of attempted [*name object crime*], the State must have proved each of the following elements:
> The Defendant
> 1. acting with the specific intent to commit [*name object crime*] by [*set out elements of object crime as charged*]
> 2. did [*set out conduct charged as substantial step*]
> 3. which was conduct constituting a substantial step toward the commission of the intended crime of [*name object crime*].

Indiana Pattern Jury Instruction 2.03 (Supp. 1995)

3. In that case the Defendant was convicted of attempted escape as a Class C felony. The relevant instruction provided in pertinent part:

> To convict the defendant, the State must have proved each of the following elements:
> 1. William Fred Taylor
> 2. intentionally
> 3. engaged in conduct of fleeing from lawful detention
> 4. which was a substantial step toward the commission of the crime of escape, the intentional fleeing from lawful detention.

the apartment with his foot and appeared nervous about opening the package. From this set of facts, a jury could have found that Neuhoff engaged in a substantial step towards possession of the package.

Judgment affirmed.

DARDEN, J., concurs.

SULLIVAN, J., concurs in result with opinion.

SULLIVAN, Judge, concurring in result.

I concur with the majority's affirmance, in Part I, of the trial court's denial of appellant's Motion to Suppress. In doing so, however, I must respectfully note that the majority cites to *Kenner v. State* (1999) Ind.App., 703 N.E.2d 1122, 1125, *reh'g denied,* for the proposition that "the alert of a trained dog can provide the probable cause necessary to obtain a search warrant." Op. at 891. To be sure, in the case before us, postal inspector Sadowitz did obtain a search warrant following the Indianapolis Police dog's alert to the presence of drugs. Similarly, in *U.S. v. Place* (1983) 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110, the seminal case concerning dog-sniff investigations, the D.E.A. agents utilized the airport dog alert to obtain a search warrant. They did not effect an arrest based upon the dog's reaction to the luggage.

In *Kenner,* however, the majority held that, "[t]he dog's alert to the presence of marijuana provided Officer McDonald with probable cause *to search Kenner's car."* *Kenner, supra,* 703 N.E.2d at 1127 (emphasis supplied). I would disassociate myself from the breadth of this holding and would merely restate the following from my separate opinion in *State v. Watkins* (1987) Ind.App., 515 N.E.2d 1152, 1157 (Sullivan, J., dissenting), *reh'g denied:* "In any event, I find no authority which would authorize an arrest based upon the targeting of certain luggage [or package] by a trained narcotics dog. Such *might well justify further investigation or* issuance of a search warrant but not an arrest or even a warrantless search."

I would add a further cautionary note with respect to the seeming reliance for probable cause placed by the majority upon the use of a drug smuggling profile. The use of allegedly objective and verifiable profiles as a predominant tool in the "War 'Against Drugs" is fraught with the danger of misapplication and risks a consequent violation of the right of privacy held by innocent persons. The factors set forth by the majority here as justification for the actions of the postal inspectors are consistent with innocent conduct upon the part of a sender and an addressee.

This conclusion is reached by analogizing the case to the use of drug courier profiles. Drug profiles list factors consistent with innocent passenger behavior. Use of drug profiles to identify narcotics traffickers has been seriously questioned. As one scholar has observed, "[use of the drug courier profile] permits searches and seizures of travelers whose conduct is facially innocent because they conform to a formula which purports to describe an entire class of criminals." Morgan Cloud, *Search and Seizure by the Numbers: The Drug Profile and Judicial Review of Investigative Formulas,* 65 B.U.L.Rev. 843, 920. Another has stated that, "[w]ith the entrenchment of the drug courier profile, agents may randomly stop citizens for arbitrary reasons or for innocent differences in their appearance from fellow passengers. Agents may then detain citizens until the agents gather enough evidence to 'call out the dogs' or conduct a search themselves." Charles L. Becton, *The Drug Courier Profile: "All Seems Infected to th' Infected Spy, As All Looks Yellow to the Jaundic'd Eye,"* 65 N.C. L.Rev. 417, 470–71. *See* Andrew Jay Flame, *CRIMINAL PROCEDURE—DRUG COURIER PROFILES AND TERRY-TYPE SEIZURES,* 65 Temp. L.Rev. 323, 335 (1992) (observing that, "[a]ll airline travelers meet several drug courier characteristics just by entering the terminal, boarding the plane, and deplaning").

Packages sent through the mail may contain contraband. This however does not justify the seizure of all private packages merely because such packages may be argued to fall within an overly broad range of profile characteristics. As noted by Becton, *supra* at 471:

"[The role of drug profiles] is not to establish in court that agents had a reasonable suspicion before the stop. Rather it

should serve as a tool for DEA agents to use in identifying suspects, following or investigating further, and stopping suspects once reasonable suspicion actually exists.... [There should be] a showing in each case that the agent had reasonable suspicion to stop and detain a person from observations judged on their own merit, rather than as a part of a larger composite and all encompassing profile."

Although detention of a package and use of dogs to sniff is not so intrusive as. is the detention of a traveling citizen, Fourth Amendment privacy implications are similarly involved.

The use of drug courier profiles, whether with regard to individuals suspected of carrying drugs or with regard to packages in the mail "lend[s] an arguably false sense of legitimacy to searches based on no more than an artfully disguised hunch." Alexandra Coulter, *Drug Couriers and the Fourth Amendment: Vanishing Privacy Rights for Commercial Passengers,* 43 Vand. L.Rev. 1311, 1326. While I do not endorse the use of drug profiles to establish probable cause, on the whole, nevertheless, I conclude that there was adequate probable cause for the issuance of the search warrant in this case and that the trial court did not err in denying Neuhoff's Motion to Suppress.

I concur in full as to Parts II and III of the majority opinion.