Dale **MURRELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 39A04–0006–CR–244.

Court of Appeals of Indiana.

April 17, 2001.

Rehearing Denied June 11, 2001.

Wilmer E. Goering, II, Madison, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Stephen R. Creason, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RATLIFF, Senior Judge.

*STATEMENT OF THE CASE*

Defendant Appellant Dale Murrell appeals his conviction of dealing in cocaine, a Class A felony. Ind.Code § 35–48–4–1.

We affirm.

*ISSUES*

Murrell presents six issues for our review, which we reorganize and restate as:

I. Whether the trial court erred when it permitted into evidence:

(A) A police officer's identification of Murrell;

(B) A witness's statement naming Murrell as his cocaine source;

(C) Exhibit 1, consisting of 5.52 grams of unpurified cocaine;

(D) Murrell's identifying information furnished at book-in.

II. Whether the trial court erred when it refused to give proffered jury instructions.

III. Whether sufficient evidence supports the conviction.

*FACTS AND PROCEDURAL HISTORY*

On March 10, 1998, at approximately 10:30 p.m., undercover Indiana State Police Troopers Herbert Fitzgerald, Jr. and Jamie Noel, along with Sergeant Myron Wilkerson and a confidential informant (C.I.), went to the Hanover High School parking lot to purchase crack cocaine, but the seller did not show up. Trooper Fitzgerald and the C.I. then went to a nearby apartment. Brian Gibson met Fitzgerald and took him inside, where Fitzgerald saw Murrell and asked him how much he had. Murrell responded that he had twelve grams of crack cocaine. He then tossed Trooper Fitzgerald a clear, plastic bag containing cocaine for which Fitzgerald paid Murrell $1,000.00. Murrell identified himself as "Dale" but stated that everyone called him "Diggety." (R. 251).

Fitzgerald weighed the drug, discovered he had been shorted, and returned to the apartment. Murrell, Gibson and a third unidentified person drove up. Addressing "Diggety" by name, Fitzgerald complained of a shortage of six grams. Murrell agreed that he owed Fitzgerald that amount, and the two men shook hands.

Three to ten days later, Gibson drove up to Sergeant Wilkerson's undercover car, mistaking it for Fitzgerald's vehicle. Gibson talked with Wilkerson about the "business" he shared with his "uncle" Dale. He offered to "hook up" Wilkerson with Dale, whom he further identified as "Diggety" and "Dale Murrell." (R. 425–26).

Fitzgerald identified Murrell from a photograph. He again identified Murrell at trial. The cocaine was admitted, along with evidence demonstrating that the substance weighed 5.52 grams. Murrell was convicted, and this appeal followed.

*DISCUSSION AND DECISION*

I. EVIDENTIARY RULINGS

Murrell first challenges multiple evidentiary rulings by the trial court. It is well settled that the admission or exclusion of evidence lies within the sound discretion

of the trial court. *Doty v. State,* 730 N.E.2d 175, 178 (Ind.Ct.App.2000). We will reverse the court's decision only when its action is clearly against the logic and effect of the facts and circumstances before the court. *McCotry v. State,* 722 N.E.2d 1265, 1267 (Ind.Ct.App.2000), *trans. denied.* Error may not be predicated upon an evidentiary ruling unless a substantial right of a party is affected. Ind. Evidence Rule 103(a).

## A. Identification

■ Murrell contends that the trial court erred when it permitted Trooper Fitzgerald to identify him as the person from whom he had purchased cocaine. The record reveals that, after the transaction, Fitzgerald "was trying to determine a first, last name, social security number, a residence, things of that nature on this individual" named "Dale" or "Diggety." (R. 270). After discovering Murrell's surname, Fitzgerald examined a photo identified as that of "Dale Murrell" and immediately recognized Murrell as the dealer. Murrell insists that this identification was impermissibly suggestive and that Fitzgerald's in-court identification was based upon the photo.

■ Due process of law requires suppression of testimony concerning an out-of-court identification when the procedure employed was unnecessarily suggestive. *Farrell v. State,* 622 N.E.2d 488, 493 (Ind. 1993). A reviewing court determines whether, under the totality of the circumstances, the identification process was conducted in such a way that it created a substantial likelihood of irreparable misidentification. *Id.* Factors to be considered include (1) the opportunity of the witness to view the person at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, and (4) the level of certainty demonstrated by the witness. *Id.*

Here, Murrell emphasizes that Trooper Fitzgerald identified him from a single photo. However, Murrell had already been identified by name. In addition, Fitzgerald, an experienced professional, had ample opportunity to observe Murrell twice on the same night. The two men were close enough to shake hands. Fitzgerald was positive about his identification and, at trial, identified Fitzgerald independent of the photograph. We are not persuaded that the use of the photograph in this case affected Murrell's substantial rights. The trial court did not err when it permitted Officer Fitzgerald to identify Murrell as the person who had sold him cocaine.

## B. Co–Conspirator's Statement

■ Next, Murrell challenges the testimony of Sergeant Wilkerson who related the conversation with Gibson about the "business" Gibson shared with his "uncle" Dale Murrell. (R. 425–26). Over Murrell's objection at trial, the court ruled that the evidence was admissible under Ind. Evidence Rule 801(d)(2)(E), which provides that statements "by a co-conspirator of a party during the course and in furtherance of the conspiracy" are not hearsay and, thus, are admissible.

Murrell argues that no conspiracy was charged in this case, but a formal charge of conspiracy is not required by the Rule or by case law. *See Gillespie v. State,* 194 Ind. 154, 142 N.E. 220, 222 (1924) (decided prior to adoption of Rules of Evidence). Murrell also insists that Gibson's statement was not made in furtherance of a conspiracy, as required under the Rule, because any such conspiracy ended on March 10, 1998. As the State points out, however, Gibson's statements show that he and Murrell were involved in an ongoing conspiracy to sell drugs. *See United*

*States v. Escobar*, 50 F.3d 1414, 1423 (8th Cir.1995) (recognizing that statements of one conspirator identifying another are made in furtherance of the conspiracy). We find no reversible error.

## C. Chain of Custody

In another assignment of error, Murrell claims that the cocaine was inadmissible due to a defective chain of custody. The State is required to show a chain of custody in order to demonstrate the unlikelihood of tampering, loss, substitution or mistake. *McCotry*, 722 N.E.2d at 1267. In substantiating a chain of custody, the State must give reasonable assurances that the property passed through various hands in an undisturbed condition. *Culver v. State*, 727 N.E.2d 1062, 1067 (Ind.2000). "[T]he State need not establish a perfect chain of custody whereby any gaps go to the weight of the evidence and not to admissibility." *Id.*

Here, Murrell maintains there was inadequate chain of custody "because the evidence technician was not the custodian of the laboratory records, nor did she supervise the evidence clerks." Murrell does not identify the "evidence technician," but his challenge apparently relates to the testimony of Rebecca Nickless, a forensic scientist for the Indiana State Police in Evansville. Nickless described the laboratory's standard protocol in the receipt of evidence and its information management system. She then testified regarding the receipt and care of the cocaine in this case. Additional testimony was not required. *See id.* (reasoning that, without additional testimony from receiving clerk, witness sufficiently established protocol employed by control room in receiving evidence packages).

Merrill also charges a "serious and complete gap" in the chain of custody after August of 1999, because a computer-generated "evidence log" included no record of the cocaine after that date. However, other witnesses testified concerning the whereabouts of the evidence and its use in a separate trial. There is a presumption of regularity in the handling of exhibits by public officers. *Id.*[1] In addition, on the day of trial, identifying information was present, and Nickless's seal was intact. The State provided reasonable assurance that the cocaine passed through various hands undisturbed. The trial court did not err in admitting the cocaine.

## D. Booking Information

At trial, Murrell's mother testified concerning a "mark" on his forehead. (R. 525). This testimony was apparently offered in response to Trooper Fitzgerald's testimony that he did not notice any marks or scars on Murrell. On rebuttal, the State called Tanya Colber, the "jail commander," who described the "book-in" process. (R. 543). Through her testimony the State showed that, in response to a request for identifying "Scars," (R. 563), Murrell failed to mention any scar on his forehead. Murrell now claims that this evidence was inadmissible because, when he answered that question, he had not been advised of his right to remain silent as enunciated in *Miranda v. Arizona*, 384

---

1. Murrell argues that the presumption is invalid in this case because "there were serious problems with the handling and processing of drug evidence at the Evansville Regional Laboratory" at the relevant time. The record indicates that another chemist had been improperly disposing of certain samples "taken out for the testing." (R. 451). However, Murrell does not demonstrate how that "problem" relates to the cocaine at issue. It was incumbent upon Murrell to present evidence demonstrating more than a mere possibility that the cocaine could have been tampered with. *See Doty*, 730 N.E.2d at 178. He did not meet his burden in that regard.

U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

"*Miranda* requires procedures that will warn a suspect in custody of his right to remain silent and which will assure the suspect that the exercise of that right will be honored." *Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 2335, 147 L.Ed.2d 405 (2000). The procedural safeguards of *Miranda,* however, apply only to custodial interrogation. *Boarman v. State,* 509 N.E.2d 177, 180 (Ind. 1987). The parties agree that Murrell was in custody. Nevertheless, not every question a police officer asks a person in custody constitutes "interrogation." *Id.* at 180–81. *Miranda* is not triggered if it does not appear that the purpose of the question is to obtain a confession from the suspect. *Id.*

In this case, the request for identifying marks was not designed to elicit an incriminating response. Rather, the question was routinely asked during booking procedures. A police officer may ask such routine identification information without giving *Miranda* warnings. *See id.* at 181. The rebuttal testimony concerning Murrell's facial scar was not rendered inadmissible by the lack of *Miranda* warnings.

## II. JURY INSTRUCTIONS

We next consider Murrell's claim that the court erred when it refused two jury instructions. In reviewing a trial court's decision to refuse a tendered jury instruction, we consider (1) whether the instruction correctly states the law, (2) whether there was evidence in the record to support the giving of the instruction, and (3) whether the substance of the proffered instruction is covered by other instructions. *Chambers v. State,* 734 N.E.2d 578, 580 (Ind.2000).

Here, the defendant is African American and Trooper Fitzgerald is white.

Murrell insists that the trial court was required to instruct the jury on cross-racial identification, as requested in his following proposed Instruction No. 1:

> You know that the identifying witness is of a different race than the defendant. When a witness, who is a member of one (1) race identifies a member who is of another race, we say there has been a cross-racial identification. You may consider, if you think it is appropriate to do so, whether the cross-racial nature of the identification has affected the accuracy of the witness' original perception and/or the accuracy of a subsequent identification.

(R. 122).

In *Hopkins v. State,* 582 N.E.2d 345, 353 (Ind.1991), our supreme court discussed the "general hazards of identification evidence in certain circumstances." Nevertheless, "Indiana law ... is distinctly biased against jury instructions which single out eyewitness identification testimony." *Brown v. State,* 468 N.E.2d 841, 843 (Ind. 1984). Further, Murrell has not demonstrated a specific risk that Trooper Fitzgerald's identification may have been mistaken due to cross-racial factors. *See State v. Cromedy,* 158 N.J. 112, 727 A.2d 457 (1999) (finding error in refusal to give instruction where identification was critical issue, not corroborated by other evidence, and eyewitness's cross-racial identification was not made for nearly eight months despite attempts made five days following commission of crimes). The trial court was not required to give the instruction on cross-racial identification.

Murrell also assigns error in the court's decision to give only the italicized paragraph of requested Instruction No. 2, which follows in its entirety:

> *You, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before*

*you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.*

Identification testimony is an expression or belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

1. Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

2. Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection?

3. Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

The burden of proof on the Prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identify [sic] of the defendant as the perpetrator of the crime with which he stands charged.

(R. 123). The foregoing is derived from *United States v. Telfaire*, 469 F.2d 552, 558–59 (D.C.Cir.1972). *See Hopkins*, 582 N.E.2d at 353 (discussing instruction). However, our courts have rejected that instruction. *See, e.g., id.; see also Fry v. State*, 447 N.E.2d 569, 573 (Ind.1983). Given that the instruction is not a correct statement of Indiana law, the court did not err in declining to give it.

## III. SUFFICIENCY OF THE EVIDENCE

 Finally, we turn to Murrell's two-part argument that there is insufficient evidence to support his conviction. When this court reviews a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Neuhoff v. State*, 708 N.E.2d 889, 893 (Ind. Ct.App.1999). Rather, we examine the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. *Id.* If there is sufficient evidence to support the conviction, it will not be set aside. *Id.*

 Murrell first insists that there is insufficient evidence serving to identify him as the person who sold cocaine. He points out that Trooper Fitzgerald did not mention the scar on his forehead. In addition, he highlights his mother's testimony that he had limited use of his right hand and argues that he could not have tossed the cocaine with that hand, as Fitzgerald had testified. The jury weighed all evidence regarding identification and chose to believe that Murrell was the person who sold cocaine to Fitzgerald. It is not our prerogative to reweigh that evidence.

Secondly, Murrell argues that there is insufficient evidence to prove that the cocaine weighed three grams or more, a necessary element of dealing in cocaine as a Class A felony. *See* I.C. § 35–48–4–1(b)(1). He concedes that the weight of the entire substance exceeded three grams, but complains that no qualitative test was performed to determine the purity of the sample. In essence, Murrell insists that the State was required to show that he sold three or more grams of pure cocaine. He is mistaken. The legislature intended that the weight of the entire substance as delivered by the defendant be

considered and, thus, the State is not required to prove purity of the product. *Riley v. State,* 711 N.E.2d 489, 493 (Ind. 1999). Here, the weight of the entire substance was 5.52 grams. There is sufficient evidence to support Murrell's conviction.

Conviction affirmed.

MATTINGLY, J., and SULLIVAN, J., concur.