## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 10 2019, 10:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John Kindley
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tyson A. Eminger,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 10, 2019

Court of Appeals Case No.
18A-CR-2759

Appeal from the Noble Superior Court

The Honorable Robert E. Kirsch, Judge

Trial Court Cause No.
57D01-1709-F2-6

**Baker, Judge.**

Tyson Eminger appeals his convictions and the sentence imposed by the trial court for Level 2 Felony Dealing in Methamphetamine,[1] Level 4 Felony Unlawful Possession of a Firearm by a Serious Violent Felon,[2] and Class A Misdemeanor Resisting Law Enforcement,[3] arguing that the trial court erred when it admitted certain evidence because the search was unlawful and that the sentence is inappropriate in light of the nature of the offenses and his character. Finding no error and the sentence not inappropriate, we affirm.

# Facts

On September 18, 2017, there was an active arrest warrant for Eminger. On that day, the Noble County Sheriff's Department received information from Richard Rhoades about Eminger after Deputy Sheriff Johnny Ritchie stopped Rhoades's vehicle and questioned him. Rhoades agreed to meet Eminger at a gas station in Rome City in order to purchase methamphetamine as part of a controlled drug buy. Several undercover officers then drove to the gas station.

Later that evening, Eminger, Joshua Rowe, and Kristian Martin got into a vehicle. Martin was in the driver's seat, Eminger was in the front passenger's seat, and Rowe sat directly behind Eminger. They first drove to Eminger's home to pick up two items and then to the Marathon gas station in Rome City,

---

[1] Ind. Code §§ 35-48-4-1.1(a)(2), -1.1(e)(1).

[2] Ind. Code § 35-47-4-5(c).

[3] Ind. Code § 35-44.1-3-1(a)(1).

where they were to meet Rhoades. At the gas station, Eminger was standing outside the vehicle when law enforcement came out of hiding. The officers drew their weapons and ordered Eminger to lie on the ground. Eminger refused. He then proceeded to argue and fight with some of the officers until he was tased into submission.

[4] Officers then took Eminger into custody and searched him, finding $1,070 and a cell phone in his pockets. A search of the phone revealed the text message conversation between Eminger and Rhoades about methamphetamine. The officers ordered Martin and Rowe out of the vehicle. Deputy Sheriff Carey Coney then conducted an open-air sniff around the vehicle using a drug-sniffing dog. The dog almost immediately alerted the officers to the presence of something in the front passenger's seat, where Eminger had been sitting. The drug-sniffing dog did not alert the officers to any other part of the vehicle. The officers ran a VIN and license plate check of the vehicle and discovered that it was stolen.

[5] With this information, the officers searched the vehicle. On the floor of the front passenger's seat inside a blue lunch tote, they found a firearm and an Arizona Tea can with a hidden compartment containing a substance that was later determined to be methamphetamine. The methamphetamine was packaged in a way that is consistent with dealing. In the seat directly behind the front passenger's seat, the officers found a black bag containing syringes, a small amount of a substance that was later determined to be marijuana, more methamphetamine, scales, ammunition, and small baggies that are commonly

used for drug transactions. Later testing revealed the total amount of methamphetamine to be 28.02 grams.

[6]     On September 22, 2017, the State charged Eminger with one count of Level 2 felony dealing in methamphetamine, one count of Level 4 felony unlawful possession of a firearm by a serious violent felon, and one count of Class A misdemeanor resisting law enforcement. The State also alleged that Eminger was an habitual offender. Eminger has a long criminal history, which includes convictions for Class C misdemeanor illegal possession of an alcoholic beverage, Class A misdemeanor resisting law enforcement, Class A misdemeanor operating a vehicle while intoxicated, Class A misdemeanor possession of marijuana, Class D felony possession of marijuana, Class A misdemeanor criminal recklessness with a vehicle, Class A misdemeanor battery resulting in bodily injury, Class A misdemeanor driving while suspended, Class C felony possession of two or more chemical reagents, and Class B felony dealing in methamphetamine.

[7]     On December 22, 2017, Eminger filed a motion to suppress the evidence. Following a February 2, 2018, evidentiary hearing, the trial court denied Eminger's motion to suppress, holding that Eminger did not have standing to challenge the search because it was of a stolen vehicle and that even if Eminger had standing, the officers had probable cause to search.

[8]     On April 13, 2018, the State filed an additional charge of Level 4 felony possession of methamphetamine. At Eminger's September 19-21, 2018, jury

trial, Eminger made a continuing objection to the admission of any evidence obtained from the search of the vehicle, which the trial court noted and overruled. *See* Tr. Vol. II p. 175. Eminger waived his right to a jury trial as to the habitual offender enhancement. The jury found Eminger guilty as charged. After a separate bench trial, the trial court found that Eminger was an habitual offender.

[9]     At Eminger's October 19, 2018, sentencing hearing, the trial court merged the Level 4 felony possession conviction into the Level 2 felony dealing conviction for purposes of double jeopardy. The trial court then sentenced Eminger to twenty years for the dealing in methamphetamine conviction and enhanced the sentence by ten years due to Eminger's habitual offender status; six years for the unlawful possession of a firearm by a serious violent felon conviction, with four years suspended to probation, to be served consecutively with the felony dealing conviction; and one year for the resisting law enforcement conviction to be served concurrently with the felony dealing conviction. Eminger's aggregate executed sentence is thirty-two years. Eminger now appeals.

# Discussion and Decision

# I. Admission of Evidence

[10]     First, Eminger argues that the trial court erred when it admitted certain evidence stemming from the search of the vehicle because the search violated the federal and state constitutions. Specifically, Eminger contends that the

officer's search of the black bag and the blue lunch tote containing methamphetamine and the firearm was unlawful pursuant to the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

[11] As a general matter, the Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. Article 1, Section 11 of the Indiana Constitution contains nearly identical language and says that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated[.]" Evidence that is the product of an unlawful search is inadmissible under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. *Hill v. State*, 956 N.E.2d 174, 177 (Ind. Ct. App. 2011) (holding that evidence that is obtained from an illegal search is "fruit of the poisonous tree," and therefore, inadmissible in a court of law).

[12] Reversal of a trial court's admissibility determinations is appropriate only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997). "Moreover, we will sustain the trial court['s] [decision on the admission of evidence] if it can be done on any legal ground apparent in the record." *Jester v. State*, 724 N.E.2d 235, 240 (Ind. 2000). However, we will review a trial court's conclusions of law de novo,

giving no weight to the legal analysis below. *Sanders v. State*, 989 N.E.2d 332, 334 (Ind. 2013).[4]

### A. Fourth Amendment to the United States Constitution

First and foremost, there is the question of standing. Under the Fourth Amendment, a defendant may not challenge the constitutionality of a search unless he can demonstrate that he had a reasonable expectation of privacy in the place to be searched. *Sidener v. State*, 55 N.E.3d 380, 383 (Ind. Ct. App. 2016); *see generally Minnesota v. Carter*, 525 U.S. 83, 90-91 (1998). Generally, defendants have no standing to object to the search of a stolen automobile because they have no legitimate expectation of privacy therein. *Medelvitz v. State*, 416 N.E.2d 1270, 1274 (Ind. Ct. App. 1981). Additionally, passengers—as opposed to drivers—have diminished expectations of privacy in vehicles because they do not exercise control over those vehicles. *Sidener*, 55 N.E.3d at 383. Eminger was not only a passenger inside a vehicle, but the vehicle itself was also stolen. So, from the outset, the evidence appears to demonstrate that

---

[4] Both parties concede that this appeal is appropriately framed as a challenge to the admission of evidence since Eminger did not bring an interlocutory appeal of the denial of his motion to suppress. *Cochran v. State*, 843 N.E.2d 980, 982 (Ind. Ct. App. 2006). However, the State argues that Eminger failed to make a continuing objection to the admission of all subsequent evidence obtained from the search on constitutional grounds, insisting that this Court should only review Eminger's claims for fundamental error. *See* Appellee's Br. p. 14-15. This is patently incorrect. Notwithstanding the trial court's acknowledgment of Eminger's continuing objection, even the State's attorney recognized the continuing objection for appeal when he said, "I think Judge that it's judicious and wise of us to make those objections of record now that way in the event there is a conviction that issue or those issues are reserved for appeal later." Tr. Vol. II p. 175. Therefore, Eminger has not waived these issues for appeal, and we are not limited to reviewing Eminger's claims only for fundamental error.

Eminger lacks standing to challenge the constitutionality of the search under the Fourth Amendment to the United States Constitution.

[14] Assuming solely for argument's sake that Eminger had standing to challenge the search, the Fourth Amendment prohibits warrantless searches unless an exception applies. *Black v. State*, 810 N.E.2d 713, 715 (Ind. 2004). The automobile exception is well established, allowing officers to conduct a warrantless search of a vehicle where (1) the vehicle was readily mobile or capable of being driven when the police first seized it; and (2) probable cause existed that the vehicle contained contraband or evidence of a crime. *Cheatham v. State*, 819 N.E.2d 71, 75-76 (Ind. Ct. App. 2004). Probable cause exists "where facts found on a reasonable inquiry would induce a reasonably intelligent and prudent person to believe the accused has committed [a] crime." *Street v. Shoe Carnival, Inc.*, 660 N.E.2d 1054, 1056 (Ind. Ct. App. 1996). "The determination of probable cause is a mixed question of law and fact." *Earles v. Perkins*, 788 N.E.2d 1260, 1264 (Ind. Ct. App. 2003).

[15] Here, it is undisputed that the officers had the authority to invoke the automobile exception to search the vehicle and its contents therein. First, the vehicle was readily mobile or capable of being driven when the police first seized it by virtue of its inherent operability. *See Myers v. State*, 839 N.E.2d 1146, 1152 (Ind. 2005).

[16] Second, the officers had probable cause to believe that the vehicle contained contraband or evidence of a crime. Rhoades provided the Noble County

Sheriff's Department with information about Eminger. Also, they learned through Rhoades's conversation with Eminger that Eminger was willing to sell and/or buy controlled substances. After the officers tased and arrested Eminger at the gas station, they employed a drug-sniffing dog to conduct an open-air sniff around the vehicle, and the drug-sniffing dog immediately alerted officers to something in the front passenger's seat. While an open-air sniff by itself does not necessarily provide law enforcement with probable cause, our Supreme Court has held that a sniff and subsequent alert following the initial suspicion of contraband can provide law enforcement with probable cause to believe a vehicle contains illegal drugs. *State v. Hobbs*, 933 N.E.2d 1281, 1286 (Ind. 2010); *see also Neuhoff v. State*, 708 N.E.2d 889, 891 (Ind. Ct. App. 1999).

[17] The drug-sniffing dog's open-air sniff and alert combined with the knowledge that Eminger was ready and willing to engage in a transaction for controlled substances, that Eminger was aggressive and resistant to law enforcement's commands, and that the vehicle was stolen established the requisite probable cause to invoke the automobile exception.

[18] Accordingly, pursuant to the automobile exception, law enforcement had the authority to search any part of the vehicle that may have contained contraband, including the blue lunch tote with the Arizona Tea can as well as the black bag. *Wilkinson v. State*, 70 N.E.3d 392, 404 (Ind. Ct. App. 2017) (holding that under the automobile exception, once probable cause is established, officers are permitted to search any items in the vehicle that might conceal controlled substances); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) (establishing

that "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search[]"). Therefore, this search did not violate the Fourth Amendment to the United States Constitution, and all evidence obtained from that search was admissible.

### B. Article 1, Section 11 of the Indiana Constitution

[19] Searches by law enforcement require a different review under Article 1, Section 11 of the Indiana Constitution:

> Conformity of a search to the Indiana Constitution turns on an evaluation of the "reasonableness" of the conduit of the law enforcement officers, not on the expectation of privacy commonly associated with Fourth Amendment analysis. Relevant considerations in evaluating reasonableness of a search under all the circumstances include the degree to which the search or seizure disrupts the suspect's normal activities, and those facts and observations that support the officer's decision to initiate the search or seizure. . . . [T]he reasonableness of a search or seizure generally turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on a citizen's ordinary activities, and 3) the extent of law enforcement needs.

*Stark v. State*, 960 N.E.2d 887, 892 (Ind. Ct. App. 2012) (internal citations omitted).

[20] First, regarding knowledge of a violation, there was a high degree of suspicion that there was unlawful activity afoot. The Noble County Sheriff's Department received pertinent information from Rhoades that Eminger would readily buy

and/or sell methamphetamine. Additionally, the officers learned that there was an active warrant for Eminger's arrest. Then, after surrounding Eminger, tasing him, and bringing him into custody, law enforcement conducted an open-air sniff using a drug-sniffing dog, and the dog almost immediately alerted the officers to the presence of drugs inside a stolen vehicle. All of this evidence in the aggregate created a strong suspicion that some law had been violated.

[21] Second, regarding the intrusion into Eminger's ordinary activities, Eminger and the other passengers had been traveling in a stolen vehicle. Though a search under the Indiana Constitution is analyzed for reasonableness, "in examining the degree of intrusion, we consider the nature of the privacy interest upon which the search intrudes and the character of the intrusion itself." *Chest v. State*, 922 N.E.2d 621, 624 (Ind. Ct. App. 2009) (holding that intrusion into defendant's ordinary activities was "minimal" because the search occurred at night and involved a vehicle that did not belong to defendant); *see generally Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005). Furthermore, the open-air sniff by the drug-sniffing dog did not lead to a search of Eminger's most personal effects such as a wallet or bag that belonged to him. Rather, the officers ultimately searched the passenger and backseat areas of a stolen vehicle in which Eminger was merely a passenger, which led to further searches of the blue lunch tote, the black bag, and the Arizona Tea can. Our Supreme Court has held that "individuals have a 'reduced expectation of privacy with regard to the property they transport in cars' traveling on public highways where the property is subject to police examination and is 'exposed to traffic accidents that

may render all their contents open to public scrutiny.'" *Krise v. State*, 746 N.E.2d 957, 971 (Ind. 2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 303 (1999)). As such, this search did not unreasonably intrude into Eminger's ordinary activities.

[22] Third, regarding the extent of law enforcement needs, the officers who seized and arrested Eminger went into the situation knowing that there was an outstanding warrant for Eminger's arrest. There was a strong possibility—after stopping and gleaning information from Rhoades—that Eminger would have drugs on his person. Accordingly, the officers had the authority to use the taser, the drug-sniffing dog, and their methods of arrest to search Eminger, the stolen vehicle, and its contents to ensure that no contraband would be removed or destroyed. And, given that this was a controlled drug buy, it was reasonable for the officers to be present and to employ the tactics they used to keep the situation from becoming precarious.

[23] Therefore, in looking at the totality of the circumstances, this search was lawful pursuant to Article 1, Section 11 of the Indiana Constitution, and the trial court did not err by admitting all the evidence obtained from that search.

# II. Appropriateness

[24] Next, Eminger argues that the aggregate sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character.

[25] Indiana Appellate Rule 7(B) states that a "Court may revise a sentence . . . if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense[s] and the character of the offender." The defendant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). In determining whether the sentence is inappropriate, we will consider numerous factors such as culpability of the defendant, the severity of the crime, the damage done to others, and a "myriad [of] other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). It is our job to leaven the outliers, not to achieve a perceived "correct" sentencing result. *Id.* at 1225.

[26] The maximum sentence for a Level 2 felony dealing in methamphetamine conviction is thirty years and the minimum sentence is ten years. Ind. Code § 35-50-2-4.5. The advisory sentence is seventeen and one-half years. *Id.* The maximum sentence for a Level 4 felony unlawful possession of a firearm by a serious violent felon conviction is twelve years and the minimum sentence is two years. I.C. § 35-50-2-5.5. The advisory sentence is six years. *Id.* For a Class A misdemeanor resisting law enforcement conviction, the defendant "shall be imprisoned for a fixed term of not more than one (1) year[.]" Ind. Code § 35-50-3-2.

[27] Here, the trial court sentenced Eminger to twenty years—just over the advisory sentence—for the dealing in methamphetamine count and enhanced it by ten years due to Eminger's habitual offender status; six years—the advisory

sentence—with two years to be executed and four years suspended to probation, for the unlawful possession of a firearm by a serious violent felon count; and the maximum one year for the resisting law enforcement count.

[28] First, as to the nature of the offenses, Eminger has committed serious drug crimes. The officers discovered almost thirty grams of methamphetamine inside the vehicle, and pursuant to the dealing statute, the State only needed to prove that the amount of the drug involved is at least ten grams. *See* I.C. §§ 35-48-4-1.1(a)(2), -1.1(e)(1). Given this large quantity of methamphetamine along with the presence of scales, syringes, individual baggies with labeling, and a firearm, it is apparent that Eminger was heavily involved in the trafficking and dealing of illegal controlled substances. *McGuire v. State*, 613 N.E.2d 861, 864 (Ind. Ct. App. 1993) (holding that "[c]ircumstantial evidence of intent to deliver, such as possession of a large quantity of drugs, large amounts of currency, scales, plastic bags, and other paraphernalia . . . can support a conviction"). Furthermore, the text messages from Eminger's phone demonstrate that Eminger was ready and willing to engage in a drug transaction with Rhoades. And, once confronted with armed officers, Eminger argued, fought back, and ultimately resisted arrest until he was tased into submission. Therefore, we find that the nature of the offenses does not render Eminger's sentence inappropriate.

[29] Second, as to Eminger's character, Eminger has a lengthy criminal record that includes multiple convictions, some for crimes that Eminger was charged with and convicted of in this case—namely, resisting law enforcement and dealing in

methamphetamine. *See Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007) (holding that "it is appropriate to consider such a [criminal] record as a poor reflection on the defendant's character, because it may reveal that he . . . has not been deterred even after having been subjected to the police authority of the State[]"). The sheer number of offenses that constitute Eminger's criminal record—alcohol abuses as a minor, battery resulting in bodily injury, possession of marijuana, dealing in methamphetamine, resisting law enforcement, and more—shows a clear disregard for the rule of law. Despite multiple opportunities for improvement, Eminger shows no sign of reform. Therefore, we find that Eminger's character does not render the sentence inappropriate.

[30] In sum, we will not revise Eminger's sentence pursuant to Indiana Appellate Rule 7(B).

[31] The judgment of the trial court is affirmed.

Riley, J., and Bailey, J., concur.