Ricky W. JESTER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 82S00–9806–CR–371.

Supreme Court of Indiana.

Feb. 18, 2000.

Glenn A. Grampp, Evansville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Ricky Jester was convicted of murder and conspiracy to commit murder in connection with the death of his wife. The trial court sentenced him to consecutive terms of sixty years for murder and fifty years for conspiracy. Jester appeals on the following issues:

I. Whether the evidence was sufficient to support his conviction for murder,

II. Whether the evidence was sufficient to support his conviction for conspiracy to commit murder,

III. Whether the trial court erred in denying his motions to sever the murder and conspiracy counts,

IV. Whether the trial court violated the hearsay rule by admitting statements attributed to his late wife,

V. Whether the trial court properly instructed the jury on accomplice liability.

In the early morning hours of July 3, 1996, Ricky Jester called the Evansville police to inform them that he had discovered his wife Teresa Jester dead, lying on the kitchen floor in a pool of blood. Teresa died from multiple gunshot wounds to her head, face, and neck.

## I. Sufficiency of the Evidence for Murder

 Jester first asserts that there was insufficient evidence to convict him of murder. In assessing such claims, we do not reweigh the evidence or judge the credibility of the witnesses. We look only to the actual evidence and the reasonable inferences therefrom that support the verdict. "If from that perspective there was evidence of probative value from which the reasonable trier of fact could conclude that appellant was guilty beyond a reasonable doubt, we will affirm the conviction." *Hazzard v. State*, 642 N.E.2d 1368, 1369 (Ind.1994).

 The record reveals that Teresa and Ricky Jester were having marital problems for at least two years before Teresa's murder. Teresa told both Rebecca Blackburn and Judy Carr that she thought Jester was having an affair, and that she contemplated leaving him. Teresa also told Jeremy Blackburn she believed that Jester was having an affair, specifically with Lisa Fisher. Indeed, Lisa Fisher testified at trial that such an affair had occurred.

The week before Teresa's murder, several people observed altercations between Teresa and Jester. Tina Bunker, Teresa's sister, testified that she saw Teresa and Jester arguing two days before Teresa's murder. Sherry Morris also testified that Jester and Teresa had an argument shortly before Teresa's murder, during which Jester called Teresa a "f——ing bitch." (R. at 755.)

About six months or a year before Teresa's death, Jester befriended James Koutz and asked Koutz to kill Teresa. Specifically, Jester told Koutz that he would give him $15,000 and a motorcycle to kill her. In February 1995 and again in the fall of 1995, Jester asked another friend, Mark Williams, to kill Teresa. Jester told Williams that Teresa was going to Louisville for a nursing seminar and asked Williams to follow her to Louisville and kill her. Jester gave Williams a handgun, and $300, and told him to be sure that Teresa's body was found (for insurance purposes). Jester also assured Williams that he would receive an additional $20,000 once the insurance proceeds were distributed.

Around 1:03 a.m. on July 3, 1996, Jester called the police and told them that he had come home to find his wife Teresa dead, lying in a pool of blood. Officer Keller arrived at Jester's home two minutes later to investigate. There was no sign of a break-in or an attempted break-in and none of the outbuildings showed evidence of entry or attempted entry. An autopsy of her body later revealed that she had been shot in the head and neck approximately six times at very close range.

About 1 p.m., the police let Jester back into his home, at which time Jester immediately began looking through a group of insurance policies. Later that day, Jester also called a car dealership requesting information about transferring the title of a recently purchased Jeep Grand Cherokee.

In April 1997, the State charged Jester with murder and conspiracy. While in jail awaiting trial, Jester spoke to a cellmate, Willie Joe Freeman, and asked Freeman

to kill Mark Williams. Jester told Freeman to "mak[e] it look like a robbery" or "like an overdose of drugs." (R. at 1277–78.) Jester also made arrangements with another friend to lend Freeman $400 to help Freeman make bond. Again, in July 1997, Jester asked another cellmate, Johnny Whitledge, if he knew anyone who could keep Williams from testifying or "make sure that he did not show up." (R. at 1314.)

█ In making his sufficiency claim, Jester points to the circumstantial nature of the evidence against him and to evidence supporting his alibi defense. It is well-settled, however, that a murder conviction may be based entirely on circumstantial evidence. *Kriner v. State,* 699 N.E.2d 659 (Ind.1998). Although each piece of evidence viewed in isolation may seem insufficient, in a conviction based on circumstantial proof, "the evidence in the aggregate may point to guilt where individual elements of the State's case might not." *Id.* at 664. This is certainly true here.

Jester's assertion that the State was unable to overcome his alibi defense is without merit. Jester contends that the evidence "clearly established that [he] could not have been at his home at the time that Teresa Jester was killed." (Appellant's Br. at 10.)

James Terry, a Schnuck's store manager, saw Jester at Schnuck's around 8:45 p.m. (R. at 777.) When Terry left the store at 10:00 p.m., he saw what he believed to be Jester's truck driving away from the store. (R. at 780.) A friend of

Jester's, Dan Hufford, and Hufford's girlfriend, Valerie Arnold, testified that Jester came to Hufford's house around 10 p.m. and left fifteen or twenty minutes later. (R. at 810–11, 849.) Videotapes from a store security camera establish that Jester was at the Schnuck's store sometime between 10:30 and 10:41 p.m. cashing a check. (R. at 924–28.) The next known time for his whereabouts was provided by Tammy Thornton who, in her police statement, said that Jester arrived at her house between 10:30 and 11:00 p.m. (R. at 1008–09.) At trial, however, Thornton testified that Jester arrived at her house between 11:15 and 11:30 p.m.[1] (R. at 994.)

Despite this alibi evidence, the jury could reasonably have concluded that Jester murdered his wife. Assuming that Jester was at Hufford's home until 10:15 or 10:20 p.m., this visit only accounts for his time before he went to Schunck's at 10:30 p.m. If Jester left Schunck's at 10:41 p.m., as the security cameras indicate, and arrived at Tammy Thornton's house sometime between 10:30 and 11:30 p.m., as her testimony indicates, there was still a significant window of opportunity for Jester to return home and shoot Teresa.[2]

This assumes, however, that the jury chose to believe Hufford and Arnold, which it was not required to do. If the jury chose not to believe them, or decided that they might have been mistaken, then there was a window of opportunity before Jester returned to Schunck's at 10:30 p.m.

In short, Jester asks us to reweigh the evidence, which is not our prerogative on appeal. Based on the foregoing, the evidence viewed as a whole and most favor-

---

1. This time period is significant because the coroner examined Teresa's body for rigor mortis at approximately 11:40 a.m. on the after her death and determined that she had been deceased for approximately ten or twelve hours. (R. at 651–53.) Additionally, a friend of Teresa's testified that she spoke with Teresa on the phone around 10:15 p.m. on July 2, 1996. (R. at 687–90.) Teresa's nephew, however, tried to call her between 10:30 and 10:40 p.m. and received a busy signal. (R. at 733.)

2. According to Evansville police Officer Taylor, the driving route from the Schnuck's store to the Jester residence would take between eight minutes and five seconds to eight minutes and forty-eight seconds while the driving route from the Jester residence to the Thornton residence would take between two minutes and twenty-eight seconds to three minutes and thirty-four seconds. (R. at 938–42.)

ably to the judgment supports the murder conviction.

## II. Sufficiency of the Evidence for Conspiracy

Jester next contends that there was insufficient evidence to support his conviction for conspiracy to commit murder.

■ Conspiracy to commit a felony requires three elements: 1) the intent to commit a felony, 2) an agreement with another person to commit a felony, and 3) an overt act, performed by either the defendant or the person with whom the defendant has entered into the agreement. Ind.Code Ann. § 35–41–5–2 (West 1998). Jester challenges his conspiracy conviction on the basis of the second element, arguing that there was no evidence that he entered into an agreement with Mark Williams because Williams never explicitly agreed to murder Teresa. (Appellant's Br. at 14.)

■ To prove the agreement element of conspiracy, the State need not prove the existence of a formal, express agreement. Rather, the conspiracy may be proved solely on the basis of circumstantial evidence. *Vance v. State*, 640 N.E.2d 51 (Ind. 1994).

In support of the conspiracy charge, the State offered the testimony of Mark Williams, with whom Jester allegedly conspired. Williams testified that Jester approached him in February 1995, and again in the spring of 1995, and asked Williams to kill Teresa. (R. at 1167.) Williams did not make any "firm plans" with Jester, but testified "I said I'd do it, I just didn't say when or how." (R. at 1168.) Williams also said he was "open for suggestions." (*Id.*) Later, Jester made more specific plans with Williams, telling him that the body "couldn't turn up missing ... and ... had to be found for insurance purposes." (R. at 1169.) Jester also gave Williams a .38 caliber pistol and $300. (R. at 1170–71.)

Later, Williams began "putting [Jester] off" and was unsure about carrying through with the murder. (R. at 1168.) Jester contends that this uncertainty establishes a lack of agreement. The jury was entitled to disagree. At some point, Williams did agree to participate in Teresa's murder, even if he later changed his mind. Thus, the evidence was sufficient to prove the existence of an agreement to support Jester's conviction for conspiracy to commit murder.

## III. Motion to Sever

■ Jester next asserts that the trial court erred in denying his motions to sever the murder and conspiracy counts.

Indiana Code § 35–34–1–9(a) provides:

Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

(1) are of the same or similar character, even if not part of a single scheme or plan;

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Indiana Code § 35–34–1–11(a) grants a defendant an absolute right to severance for offenses that have been joined "solely on the ground that they are of the same or similar character."

Jester argues that his motions to sever should have been granted because the charges were joined solely because they were of the same or similar character. In addressing this argument, we find *Davidson v. State*, 558 N.E.2d 1077 (Ind.1990), instructive. Davidson was convicted of two counts of murder for the drowning deaths of two of her children. *Id.* at 1081–82. Because the drownings occurred several years apart and involved two different children, Davidson argued that she was entitled to separate trials. *Id.* at 1082. This Court disagreed and stated:

In the case at bar, a pattern is evident of insuring an infant's life prior to the infant's suspicious drowning; the com-

mon *modus operandi,* as well as the same motive, serve to connect the crimes sufficiently to justify joinder for trial over the defendant's motion for severance.

*Id.* at 1083.

In the present case, the evidence demonstrates that the charges arose out of several acts driven by a single motive: to be rid of Teresa and collect her insurance proceeds. Moreover, the charges were not unduly complex. The trial court did not err in ordering them tried together.

## IV. Hearsay

Jester says the trial court erred in admitting testimony from witnesses who related statements made by Teresa Jester before her death. Jester argues that these statements were inadmissible hearsay under Ind. Evidence Rule 403.

Several witnesses, including Judy Carr, Tina Bunker, and Rebecca Blackburn, testified that Teresa had told them of her belief that Jester was having an affair with Lisa Fisher, (R. at 607–08, 665–66, 682, 715), and that she considered leaving Richard, (R. at 609, 1040–41, 1074). In each instance, the defense objected to the admission of the statements as hearsay and as inadmissible under Rule 403.[3]

We accord the trial court substantial discretion in ruling on evidentiary issues and will only reverse a hearsay ruling for abuse of discretion. *Light v. State,* 547 N.E.2d 1073, 1081 (Ind.1989). Moreover, we will sustain the trial court if it can be done on any legal ground apparent in the record. *Id.*

Only relevant evidence is admissible, and relevant evidence is any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. A victim's state of mind is relevant where it has been put at issue

by the defendant. *Taylor v. State,* 659 N.E.2d 535, 543 (Ind.1995). For example, in *Vehorn v. State,* 717 N.E.2d 869 (Ind. 1999), the victim's statements regarding her "stormy relationship" with the defendant were admissible to contradict the defendant's attempts to downplay their difficulties and his assertions that their problems not "uncommon" given the "on-again, off-again" nature of the relationship. *Id.* at 873–74.

Jester, however, did not put his relationship with Teresa in issue. In fact, during its case in chief, the defense offered as its only evidence two docket sheets from cases involving Mark Williams. Thus, the court erred in allowing Teresa's statements regarding her relationship with Jester into evidence.

An error is not reversible, however, unless it affects the substantial rights of a party. *Fleener v. State,* 656 N.E.2d 1140 (Ind.1995). Here, the hearsay evidence was merely cumulative of other evidence properly admitted. *See Hicks v. State,* 690 N.E.2d 215, 223 (Ind.1997). There was ample evidence that Teresa and Jester had often and recently argued. Moreover, Lisa Fisher testified that she and Jester had in fact been romantically involved. (R. at 1061–65.) Therefore, the admission of hearsay evidence was cumulative and is not grounds for reversal.

## V. Lesser Included Offense Instruction

Finally, Jester contends that the court erred in instructing the jury regarding aiding or inducing a crime. He says there was no evidence to support the instruction. (Appellant's Br. at 12.)

Under Ind.Code § 35–41–2–4, "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." Aiding, inducing or causing an offense is not a separate offense in itself, but is, in

---

3. In making his argument, Jester points to the statements of twelve witnesses. (Appellant's Br. at 17.) We find that the testimony of each

of the witnesses is sufficiently similar such that it all falls under the same analysis.

fact, the basis of liability for the underlying offense of murder. *Thacker v. State,* 556 N.E.2d 1315, 1322 (Ind.1990). Additionally, a "defendant may be convicted on evidence of aiding or inducing even though the State charged the defendant as the principal." *Whitener v. State,* 696 N.E.2d 40, 44 (Ind.1998).

 "An instruction is proper only if there is some evidence of probative value to support it." *Wisehart v. State,* 693 N.E.2d 23, 51 (Ind.1998), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1338, 143 L.Ed.2d 502 (1999). Here, there was such evidence. The State introduced evidence that Jester twice attempted to induce someone else to kill his wife, approaching both Mark Williams and James Koutz. Even if Jester was acquitted of Teresa's murder, the jury could have found that he induced a third person to kill her. Thus, the trial court did not abuse its discretion by instructing the jury on accomplice liability.

## Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.