**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 28 2012, 10:04 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**RICKY JESTER**
Wabash Valley Correctional Facility
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICKY JESTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1203-CR-141 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Carl A. Heldt, Judge
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-9704-CF-360

**December 28, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

In 1998, a jury convicted Ricky Jester of murder and conspiracy to commit murder for fatally shooting his wife Teresa Jester in 1996, and for arranging to have her shot by one of his friends earlier that same year. The trial court sentenced him to consecutive terms of sixty years for murder and fifty years for conspiracy. He filed a direct appeal, challenging, among other issues, the sufficiency of evidence to support both convictions. Our supreme court affirmed his convictions, and he filed a string of unsuccessful petitions for post-conviction relief and permission to file a belated appeal. In 2011, he filed a motion for correction of erroneous sentence, challenging his consecutive terms for murder and conspiracy to commit murder on double jeopardy grounds. In March 2012, the trial court denied his motion, finding that his double jeopardy claim was inappropriate for resolution via a motion to correct erroneous sentence.

Jester now appeals, asserting that the trial court erred in denying his motion to correct erroneous sentence. Finding no error, we affirm.

## Facts and Procedural History

We adopt our supreme court's fact summary from Jester's direct appeal:

Teresa and Ricky Jester were having marital problems for at least two years before Teresa's murder. Teresa told both Rebecca Blackburn and Judy Carr that she thought Jester was having an affair, and that she contemplated leaving him. Teresa also told Jeremy Blackburn she believed that Jester was having an affair, specifically with Lisa Fisher. Indeed, Lisa Fisher testified at trial that such an affair had occurred.

The week before Teresa's murder, several people observed altercations between Teresa and Jester. Tina Bunker, Teresa's sister, testified that she saw Teresa and Jester arguing two days before Teresa's murder. Sherry Morris also

2

testified that Jester and Teresa had an argument shortly before Teresa's murder, during which Jester called Teresa a "f---ing bitch." (R. at 755.)

About six months or a year before Teresa's death, Jester befriended James Koutz and asked Koutz to kill Teresa. Specifically, Jester told Koutz that he would give him $15,000 and a motorcycle to kill her. In February 1995 and again in the fall of 1995, Jester asked another friend, Mark Williams, to kill Teresa. Jester told Williams that Teresa was going to Louisville for a nursing seminar and asked Williams to follow her to Louisville and kill her. Jester gave Williams a handgun, and $300, and told him to be sure that Teresa's body was found (for insurance purposes). Jester also assured Williams that he would receive an additional $20,000 once the insurance proceeds were distributed.

Around 1:03 a.m. on July 3, 1996, Jester called the police and told them that he had come home to find his wife Teresa dead, lying in a pool of blood. Officer Keller arrived at Jester's home two minutes later to investigate. There was no sign of a break-in or an attempted break-in and none of the outbuildings showed evidence of entry or attempted entry. An autopsy of her body later revealed that she had been shot in the head and neck approximately six times at very close range.

About 1 p.m., the police let Jester back into his home, at which time Jester immediately began looking through a group of insurance policies. Later that day, Jester also called a car dealership requesting information about transferring the title of a recently purchased Jeep Grand Cherokee.

*Jester v. State*, 724 N.E.2d 235, 237 (Ind. 2000).

The State charged Jester with murder and class A felony conspiracy to commit murder, and a jury convicted him as charged. The trial court sentenced him to consecutive terms of sixty years for murder and fifty years for conspiracy. Our supreme court affirmed his convictions in 2000.

In 2001, Jester filed a petition for post-conviction relief, and the trial court granted an indefinite continuance, eventually denying his petition in 2009. From 2009 to 2011, Jester filed unsuccessful petitions for post-conviction relief and for permission to file a notice of

belated appeal. In November 2011, he filed a motion for correction of erroneous sentence, claiming that his consecutive sentences for murder and conspiracy amounted to a violation of his constitutional protection against double jeopardy. In March 2012, the trial court denied his petition, finding that a motion to correct erroneous sentence was not the proper procedural vehicle by which to resolve his double jeopardy claim. Jester now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Jester contends that the trial court erred in denying his motion for correction of erroneous sentence. When a person is erroneously sentenced, the error does not render the sentence void. Ind. Code § 35-38-1-15. Instead, the sentence shall be corrected after written notice is given to the convicted person. *Id*. A person seeking to correct his erroneous sentence must file a motion in writing, supported by a memorandum of law specifically indicating the defect in the original sentence. *Id.*

A motion to correct erroneous sentence is appropriate only when the sentence is "erroneous on its face." *Robinson v. State*, 805 N.E.2d 783, 786 (Ind. 2004).

> When claims of sentencing errors require consideration of matters outside the face of the sentencing judgment, they are best addressed promptly on direct appeal and thereafter via post-conviction relief proceedings where applicable. Use of the statutory motion to correct sentence should thus be narrowly confined to claims apparent from the face of the sentencing judgment, and the "facially erroneous" prerequisite should henceforth be strictly applied …. We therefore hold that a motion to correct sentence may only be used to correct sentencing errors that are clear from the face of the judgment imposing the sentence in light of the statutory authority. Claims that require consideration of the proceedings before, during, or after trial may not be presented by way of a motion to correct sentence.

4

*Id*. at 787. In other words, use of a motion to correct erroneous sentence should be reserved for the correction of "obvious sentencing errors." *Godby v. State*, 976 N.E.2d 1235, 1236 (Ind. Ct. App. 2012).

Here, the sentencing judgment is not facially erroneous. Instead, it simply lists Jester's convictions and states that the fifty-year term for class A felony conspiracy is to run consecutive to the sixty-year term for murder. Both terms are within the allowable sentencing ranges for such offenses. *See* Ind. Code § 35-50-2-3 (listing forty-five- to sixty-five-year sentencing range for murder); Ind. Code § 35-50-2-4 (listing twenty- to fifty-year sentencing range for class A felony). Moreover, the trial court had the discretion to enter the sentences consecutively. Ind. Code § 35-50-1-2. Any determination concerning double jeopardy would require resort to matters outside the face of the judgment. In other words, the inquiry would involve delving into the evidence to determine whether the murder itself was an act separate and distinct from the conspiracy to commit murder.[1] Such an inquiry is not allowed in cases involving a motion to correct erroneous sentence.[2] Thus, the trial court did not err in denying Jester's motion for correction of erroneous sentence.

---

[1] Article I, Section 14 of the Indiana Constitution states that "No person shall be put in jeopardy twice for the same offense." Ordinarily, "[t]wo or more offenses are the same offense if with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential element of another challenged offense." *Lee v. State*, 892 N.E.2d 1231, 1233 (Ind. 2008) (quoting *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)). Where the challenged offenses are conspiracy to commit an underlying act and the underlying act itself, what is at stake is assuring that the conspiracy, which requires an agreement and an overt act in furtherance of the agreement, is "a separate and distinct act from the underlying crime." *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring).

[2] Even if the trial court had been permitted to resort to matters outside the face of the judgment, the evidence in this case simply would not support a finding of double jeopardy, where Jester asked Williams to murder his wife (giving him money and a gun) and, in a separate and distinct act, killed her himself several months later.

Accordingly, we affirm.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.