## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Paul D. Newcomb, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | January 12, 2016 <br><br> Court of Appeals Case No. <br> 20A05-1503-CR-108 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Teresa L. Cataldo, Judge <br><br> Trial Court Cause No. <br> 20D03-1403-FB-35 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, Paul Newcomb, Jr., was convicted of dealing in methamphetamine, a Class B felony, and found to be an habitual substance offender. Newcomb appeals, raising the sole issue of whether the State presented sufficient evidence to support his conviction for dealing in methamphetamine. Concluding the evidence was sufficient, we affirm.

# Facts and Procedural History

[2] In early March 2014, Town and Country Auto Sales reported a Toyota RAV4 stolen from its lot in Elkhart, Indiana. A few weeks later, Town and Country repossession agents spotted the RAV4 at a gas station in Elkhart. The repossession agents parked their vehicles around the RAV4 to block it from leaving and exited their vehicles to confront the driver. Newcomb was the driver and sole occupant of the RAV4.

[3] While speaking with Newcomb, one of the repossession agents reached into the vehicle, which was running, to remove the key from the ignition. The key did not belong to a RAV4, and the engine did not shut off when it was removed. Newcomb grabbed a plastic bag from inside the vehicle and attempted to flee, but one of the repossession agents tackled him to the ground. The plastic bag contained instant cold packs and several bottles of lighter fluid.

[4] Corporal Dustin Young of the Elkhart Police Department was dispatched to the gas station in reference to a fight. When Corporal Young arrived, he learned

Newcomb's vehicle was possibly stolen. After confirming with dispatch the vehicle had been reported stolen, Corporal Young approached Newcomb and requested permission to perform a patdown search. Newcomb consented.

[5] During the patdown, Corporal Young felt an object in Newcomb's coat pocket and asked Newcomb to identify the object. Newcomb stated the object was a scale and gave Corporal Young permission to remove it, but before Corporal Young could do so, Newcomb admitted he also had syringes and marijuana on his person. Corporal Young uncovered these items, as well as two baggies of white pills, a glass pipe with burnt residue, and a plastic baggie with white residue. The pills were identified by their markings as an over-the-counter drug containing pseudoephedrine, and subsequent forensic testing confirmed the white residue in the baggie was methamphetamine.

[6] While Corporal Young searched Newcomb, Indiana State Police Trooper Gretchen Deal searched the RAV4. She uncovered the following items used in the manufacture of methamphetamine: additional instant cold packs, additional bottles of lighter fluid, a bottle of drain opener, a bag of salt, lithium batteries, coffee filters, pliers, and a plastic bottle. Trooper Deal did not find an active reaction vessel, but she noted the presence of loose cold pack beads on the floorboard in the back of the vehicle.

[7] Corporal Young confronted Newcomb about the items found in the RAV4. Newcomb "acknowledged that he knew what they were" and "said they were for a friend," but he refused to reveal the friend's identity. Transcript at 262.

When Corporal Young pressed Newcomb for the friend's name, Newcomb said he would not be answering any more questions. The friend's identity was never ascertained.

[8] The State charged Newcomb with dealing in methamphetamine by manufacturing as a Class B felony and also alleged he was an habitual substance offender, based on two prior convictions for possession of methamphetamine. A bench trial was held on January 14, 2015. The State called several witnesses, including Detective Greg Harder of the Elkhart Police Department. Detective Harder is trained to identify and dismantle methamphetamine labs. He processed the items recovered from the RAV4 and explained the "one-pot method" for manufacturing methamphetamine at trial. *Id.* at 328.

[9] Detective Harder testified Newcomb possessed all of the necessary precursors for manufacturing methamphetamine. The instant cold packs contained ammonium nitrate, and the drainer opener contained sodium hydroxide. *Id.* at 358-59. When combined, ammonium nitrate and sodium hydroxide create anhydrous ammonia, which is mixed with lithium and pseudoephedrine to produce methamphetamine. *Id.* at 359; State's Ex. 201. To prevent the lithium from reacting with moisture in the air, the ingredients are mixed with an organic solvent such as lighter fluid. Tr. at 337. Once the reaction is complete, the methamphetamine must be extracted from the liquid solvent. *See id.* at 375. The extraction can be accomplished by evaporation or by "crashing out" the methamphetamine. *Id*. at 343-46, 376. Evaporation occurs if the mixture is

exposed to open air, thereby allowing the solvent to evaporate and the methamphetamine to crystalize. *Id.* at 376. Alternatively, the methamphetamine is "crashed out" if the mixture is exposed to hydrochloric gas, created by mixing acid with salt. *Id*. at 343-46. The hydrochloric gas causes the methamphetamine to crystalize in the solvent, and coffee filters are used to strain the methamphetamine from the liquid. *Id.*

[10] Detective Harder also provided an explanation for why the pseudoephedrine Newcomb was carrying had been removed from its packaging. In Detective Harder's experience, manufacturers employ "smurfs" to buy pseudoephedrine, believing law enforcement can "track boxes to people as a way to try to identify meth cooks[.]" *Id.* at 355. The manufacturer exchanges cash or methamphetamine for the pseudoephedrine, and the "smurf" disposes of the packaging, which is marked with a production number identifying "what batch, what pharmacy, what truck it came off of and what plant it came from." *Id.*

[11] At the conclusion of the evidence, the trial court found Newcomb guilty of manufacturing methamphetamine, and Newcomb admitted to being an habitual substance offender. The trial court sentenced Newcomb to an aggregate sentence of twenty-four years in the Department of Correction, with four years suspended to probation. This appeal followed.

# Discussion and Decision

## I. Standard of Review

When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We neither reweigh the evidence nor assess the credibility of witnesses. *Id.* Unless no reasonable fact-finder could conclude the elements of the crime were proven beyond a reasonable doubt, we will affirm the conviction. *Id.*

## II. Dealing in Methamphetamine

"A person who . . . knowingly or intentionally . . . manufactures . . . methamphetamine, pure or adulterated . . . commits dealing in methamphetamine, a Class B felony . . . ." Ind. Code § 35-48-4-1.1(a)(1)(A) (2006). "Manufacture" is defined as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance." Ind. Code § 35-48-1-18(1) (2001). Although the manufacturing process need not be completed, the process must have been started in order to find a defendant guilty of manufacturing methamphetamine. *Iddings v. State*, 772 N.E.2d 1006, 1016-17 (Ind. Ct. App. 2002), *trans. denied*.

The State contends Newcomb had started the manufacturing process by removing the pseudoephedrine pills and the cold pack beads from their packaging, thereby engaging in "preparation." *See* Ind. Code 35-48-1-18(1) (2001). The methamphetamine residue, the State contends, "gives rise to the

inference that [Newcomb] has previously manufactured methamphetamine, had used it all, and was preparing to manufacture more." Brief of Appellee at 10. Newcomb argues preparing is not the same as actually starting the manufacturing process; he points to the fact that many of the items recovered were unopened and did not appear to have ever been used to manufacture methamphetamine.

[15] We addressed a similar set of facts in *Dawson v. State*, 786 N.E.2d 742 (Ind. Ct. App. 2003), *trans. denied*. In *Dawson*, the defendant was convicted of manufacturing methamphetamine based on his possession of crushed ephedrine, stripped lithium batteries, anhydrous ammonia, muriatic acid, camp fuel, tubing, and coffee filters. The police did not find an active reaction vessel. The defendant argued the evidence was insufficient to support his conviction for manufacturing methamphetamine because the process of manufacturing had not yet begun. The defendant "claim[ed] that having the crushed up pills does not equate to the start of the manufacturing process" and that "manufacturing does not begin until some of the precursors have been combined." *Id.* at 748. At trial, a police officer testified "it is standard practice for individuals to crush up the pills which contain ephedrine before soaking them in denatured alcohol so that the ephedrine can be extracted from the pill binders." *Id.* at 747-48. We held "once an individual crushes up pills in order to separate the ephedrine from the pill binders, the manufacturing process has begun." *Id.* at 748.

[16] Likewise, in *Harrison v. State*, 32 N.E.3d 240 (Ind. Ct. App. 2015), *trans. denied*, the defendant was convicted of manufacturing methamphetamine based on his

possession of crushed pseudoephedrine, ammonia, antifreeze, tubing, and a glass jar. The police did not find an active reaction vessel or any lithium, and the defendant argued the evidence was insufficient to support his conviction for manufacturing. We held the jury could reasonably conclude the defendant manufactured methamphetamine because he possessed every methamphetamine precursor except lithium and a police officer "described what he saw in the vehicle as a 'very early stage' methamphetamine lab . . . ." *Id.* at 246-48.

[17] In the present case, Newcomb possessed every methamphetamine precursor and the finished product, but the police did not find an active reaction vessel. Unlike *Dawson* and *Harrison*, however, the pseudoephedrine pills had not been crushed. Newcomb possessed whole pills, and in light of Detective Harder's testimony regarding "smurfs," tr. at 355, we are unpersuaded that removing the pills from their packaging constitutes the start of the manufacturing process. Although Newcomb had assembled all of the necessary components, we conclude the manufacturing process had not yet begun when the police searched the RAV4.

[18] Nonetheless, we believe the evidence was sufficient to support Newcomb's conviction. "In Indiana there is no distinction between the responsibility of a principal and an accomplice." *Wise v. State*, 719 N.E.2d 1192, 1198 (Ind. 1999). As the State argues, Newcomb admitted he knew the purpose of precursors, "said they were for a friend," and possessed the finished product. Tr. at 262. The "friend" was never identified, but Indiana Code section 35-41-2-4 provides,

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:
(1) has not been prosecuted for the offense;
(2) has not been convicted of the offense; or
(3) has been acquitted of the offense.

[19] Accomplice liability is not considered a separate crime, but merely a separate basis of liability for the crime charged. *Hampton v. State*, 719 N.E.2d 803, 807 (Ind. 1999). And even if the State charged a defendant as the principal, a defendant may be convicted on evidence of aiding another person in committing the offense. *Jester v. State*, 724 N.E.2d 235, 241 (Ind. 2000). In addition, a defendant need not have participated in every element of the offense to be convicted as an accomplice. *Lothamer v. State*, No. 92A05–1501–CR–26, 2015 WL 5732830, at *2 (Ind. Ct. App. Sept. 30, 2015), *trans. denied*. Relevant here, we have previously held a person can be guilty of manufacturing methamphetamine even though the person does not actually "cook" the product. *Id.* at *2-*3 (affirming the defendant's conviction for manufacturing methamphetamine as an accomplice where the defendant merely allowed the principal to "cook" in his fiancée's trailer).

[20] Given the fact Newcomb possessed all of the necessary precursors for manufacturing methamphetamine as well as methamphetamine residue and a scale, the trial court reasonably concluded Newcomb was personally involved in the manufacture of methamphetamine. Although we do not believe the evidence establishes the manufacturing process had begun, we conclude

Newcomb's admissions gave rise to accomplice liability. The evidence shows Newcomb at least aided another person in manufacturing methamphetamine, which is sufficient to support his conviction.

# Conclusion

The State presented sufficient evidence to support Newcomb's conviction for dealing in methamphetamine as a Class B felony. We therefore affirm Newcomb's conviction.

Affirmed.

Barnes, J., and Altice, J., concur.