## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 05 2019, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Kelly A. Loy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard H.P. Pinkham, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | February 5, 2019 <br><br> Court of Appeals Case No. 18A-CR-1088 <br><br> Appeal from the Knox Circuit Court <br><br> The Honorable Sherry B. Gregg Gilmore, Judge <br><br> Trial Court Cause No. 42C01-1409-FC-23 |

**Baker, Judge.**

[1] Richard Pinkham appeals his conviction for Class C Felony Burglary,[1] arguing that (1) his right to a speedy trial was violated; (2) the trial court erroneously admitted deposition testimony of an absent witness; and (3) the evidence was insufficient to support the conviction. Finding that there was no violation and no error, and that the evidence was sufficient, we affirm.

# Facts

[2] In the early morning hours of April 14, 2014, Pinkham and his longtime girlfriend, Jennifer Proctor, drove from Indianapolis to Vincennes. The two drove around the city for several hours before stopping at a nearby McDonald's so that Pinkham could use the restroom.

[3] At her deposition, Proctor attested to the following information:

- After using the restroom, Pinkham asked Proctor to drive to the local Taco Bell, which had just closed. Proctor then drove to Taco Bell, and Pinkham stepped out of the vehicle and dressed himself in an all-black "Ninja outfit." Tr. Vol. II p. 208.
- Pinkham retrieved a black duffel bag filled with tools, including a prybar. Proctor then drove away and parked at a nearby Chinese restaurant.
- Both had walkie talkies to communicate with each other, and Proctor monitored a police scanner on her phone.
- At roughly 4:00 a.m., Pinkham pried open the Taco Bell drive-thru window, crawled along the floor, and approached the restaurant's safe. He then used other tools from the duffel bag to cut open the safe and retrieved roughly $3,000.
- About fifteen minutes later, Pinkham radioed Proctor to pick him up, which she did. The two returned to Indianapolis.

---

[1] Ind. Code § 35-43-2-1 (2014).

[4] Soon after, Vincennes Police Department Officer Jonathan O'Brien was dispatched to the scene after reports came in of a theft at that Taco Bell. At 5:00 a.m., Officer O'Brien met two Taco Bell employees who informed him of what had happened. Surveillance footage did not reveal the identity of the masked burglar, but it showed someone breaking into the Taco Bell to commit the burglary.

[5] On May 26, 2014, Officer Paul Kruse of the Warrick County Sherriff's Office responded to a security alarm at another Taco Bell in Booneville. Upon arriving, Officer Kruse stopped a suspicious vehicle just outside the Taco Bell for a traffic violation. Pinkham was driving the vehicle, and Proctor was in the passenger's seat. Pinkham consented to a search of the vehicle, during which Officer Kruse discovered a prybar; walkie talkies; black clothing; a ski mask; a black duffel bag full of tools, including a reciprocating saw (similar to the one used to open the Vincennes Taco Bell's safe), saw blades, wire cutters, and a chisel; a blue cell phone; and a traffic ticket from Knox County dated April 7, 2014. A search of the cell phone's contents revealed a location and mapping history for the Taco Bell in Vincennes, a description of the restaurant's store hours, and a deleted search history for how to bypass an alarm system.

[6] On September 5, 2014, the State charged Pinkham with Class C felony burglary with an initial hearing set for December 22, 2014. The trial court declared Pinkham indigent and appointed him counsel. At the hearing, Pinkham requested a speedy trial, to which the trial court responded that he would need

to request this in writing through his attorney. A trial was then set for March 31, 2015.

[7] The following represents the long procedural history of this case:

- Pinkham's first public defender (PD1) filed an appearance on January 6, 2015.
- At the pretrial conference on March 11, 2015, PD1 moved for a continuance, which the trial court granted. The trial was then rescheduled for June 30, 2015.
- On June 18, 2015, PD1 moved for another continuance, which the trial court granted. The trial was rescheduled again for October 27, 2015.
- On October 14, 2015, the State moved for a continuance because it could not locate Proctor, its key witness. The trial court granted the motion and rescheduled the trial for February 23, 2016.
- However, on October 27, 2015, PD1 filed a motion for a speedy trial, and the trial was moved up to December 15, 2015.
- On December 2, 2015, the State scheduled its deposition of Proctor for December 4, 2015, but she did not appear. On December 10, 2015, the State filed another notice of deposition for December 12, 2015, at which Proctor and PD1 appeared and actively participated.
- On December 14, 2015, PD1 moved for a continuance, requesting more time to evaluate Proctor's deposition. The trial court granted the continuance and, once again, rescheduled the trial for April 26, 2016.
- On March 3, 2016, PD1 moved to withdraw from the case because he was moving out of state and moved to continue the trial date. The trial court granted the motion to withdraw but denied the motion to continue. The trial court appointed a new public defender (PD2) for Pinkham.
- On March 29, 2016, PD2 filed her appearance, and on April 7, 2016, she moved for a continuance, which the trial court granted. The trial was rescheduled for October 25, 2016.
- On April 19, 2016, PD2 moved to withdraw from the case, which the trial court granted. On May 6, 2016, the trial court cancelled the October 25, 2016, trial date and appointed a new public defender (PD3) for Pinkham.
- On May 24, 2016, PD3 filed his appearance, and on October 6, 2016, PD3 moved for a continuance, which the trial court granted. The trial was rescheduled for April 25, 2017.

- On April 6, 2017, PD3 moved for a change of plea hearing. The trial court vacated the trial date and scheduled a change of plea hearing for June 12, 2017. On April 12, 2017, PD3 moved to vacate the change of plea hearing and to continue the trial, which the trial court granted. The trial was rescheduled for August 29, 2017.
- On August 3, 2017, PD3 again moved for a continuance, which the trial court granted. The trial was rescheduled for December 19, 2017. However, on September 13, 2017, PD3 moved again for a speedy trial, which the trial court granted. The trial was scheduled for November 14, 2017.
- On October 18, 2017, the State filed a notice of intent to seek habitual offender status. PD3 also filed a motion to continue, which the trial court granted. The trial was rescheduled for February 20, 2018.
- On November 13, 2017, PD3 moved to withdraw from the case, which the trial court granted. Pinkham's new public defender (PD4) filed his appearance on February 13, 2018. The jury trial commenced on February 20, 2018.

[8] Just before the February 20, 2018, jury trial, Pinkham moved to dismiss the charges against him, arguing that his right to a speedy trial had been violated. The trial court denied this motion. At trial, the State moved to admit Proctor's deposition testimony after making multiple efforts to locate her for in-person testimony. The deputy prosecutor testified that his office sent multiple officers to different locations using all available, possible addresses to find Proctor, but they had been unable to locate her. The State read Proctor's deposition testimony into the record without objection.

[9] The jury found Pinkham guilty as charged. On March 28, 2018, the trial court sentenced him to eight years imprisonment. Pinkham now appeals.

# Discussion and Decision

# I. Speedy Trial

First, Pinkham argues that his right to a speedy trial was violated. Specifically, he claims that he requested a speedy trial twice pursuant to Indiana Criminal Rule 4(B)(1), that the trial court failed to honor those requests, and that he remained in custody for three and one-half years between his arrest and the eventual trial. Accordingly, he requests that the conviction against him be vacated.

We review a denial of defendant's motion for discharge in connection with a request for a speedy trial under Indiana Criminal Rule 4 for clear error. *Austin v. State*, 997 N.E.2d 1027, 1040 (Ind. 2013). We neither reweigh evidence nor determine the credibility of the witnesses. *Id*. We must be firmly convinced that a mistake has been made, and we consider only the probative evidence and reasonable inferences supporting the judgment. *Id*.

Both the federal and Indiana Constitutions protect an accused's right to a speedy trial. *Cundiff v. State*, 967 N.E.2d 1026, 1027 (Ind. 2012). Indiana Criminal Rule 4 implements this constitutional right, and Subsection (B)(1) provides that "[i]f any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion[.]" However, there is an exception to Criminal Rule 4 "where the defendant seeks a continuance or

the delay is otherwise the result of the defendant's conduct[.]" *Austin*, 997 N.E.2d at 1037.

[13] At two different instances, on October 27, 2015, and on September 13, 2017, Pinkham moved for a speedy trial. The trial court granted both motions and set a trial date within the prescribed seventy-day time limit. Despite these motions, Pinkham also moved to continue eight times. The trial court tried to strike a balance between the defendant's motions for a speedy trial and his motions for continuance.

[14] Though the length of time between his arrest and his trial was lengthy, it was Pinkham's repeated motions for continuances that caused the delays. In fact, Pinkham moved to continue the trial eight times. Because it was Pinkham's multiple continuances that prolonged the delay and pushed the trial to nearly three and one-half years after his arrest, we cannot say the trial court failed to honor his speedy trial requests. In other words, the trial court did not violate Pinkham's right to a speedy trial.

# II. Deposition Testimony

[15] Pinkham next argues that the trial court erroneously admitted Proctor's deposition testimony. Specifically, Pinkham claims that by admitting the deposition testimony, the trial court violated his right to confront and cross-examine a witness (Proctor) against him under the federal and Indiana Constitutions.

[16] We will overrule a trial court's ruling on admission of evidence only when the ruling is clearly against the logic and effect of the facts and circumstances before us. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). We will affirm the trial court's ruling on the admission of evidence if that decision is sustainable on any proper legal ground. *Jester v. State*, 724 N.E.2d 235, 240 (Ind. 2000). Because Pinkham did not object to the deposition testimony at trial, we will only reverse the trial court's decision to admit if it constituted fundamental error. *Treadway v. State*, 924 N.E.2d 621, 633 (Ind. 2010).

[17] Our Supreme Court has explicitly held that testimonial statements made by a person who is absent from a criminal trial cannot be admitted unless the person is unavailable and the defendant had a prior opportunity to cross-examine the person. *Fowler v. State*, 829 N.E.2d 459, 464 (Ind. 2005); *see generally Crawford v. Washington*, 541 U.S. 36, 68 (2004). A person is legally unavailable if she is absent from trial and the State has not been able the procure the person's attendance "by process or *other reasonable means*[.]" Ind. Evidence Rule 804(a)(5)(A) (emphasis added). After the trial court determines that a person is unavailable, that person's former testimony given during a lawful deposition is admissible so long as the person was available for cross-examination. Evid. R. 804(b)(1)(A); *see also Howard v. State*, 853 N.E.2d 461, 465 (Ind. 2006) (holding that admitting hearsay statements made by a person who is unavailable and had the opportunity to be cross-examined in a prior proceeding does not violate a person's Sixth Amendment right to confrontation).

[18] Pinkham argues that the trial court erred by admitting Proctor's deposition testimony because the State did not adequately show that she was unavailable to testify at trial. According to Pinkham, the State did not make a good faith effort to locate Proctor, in part because it failed to issue a subpoena for her. Additionally, Pinkham takes issue with the fact that the State did not call its police officers to testify as to why they could not locate Proctor.

[19] We find Pinkham's argument unavailing. First, Pinkham can point to no statute or case law that requires the State to issue subpoenas before the trial court may rule that a key witness is unavailable. While Pinkham cites numerous cases in which we found the issuance of a subpoena to be a factor in our decision to determine unavailability—including *Davis v. State*, 13 N.E.3d 939, 945-46 (Ind. Ct. App. 2014); *Berkman v. State*, 976 N.E.2d 68, 76-77 (Ind. Ct. App. 2012); *Tiller v. State*, 896 N.E.2d 537, 543-44 (Ind. Ct. App. 2008)—none hold that issuance of a subpoena is a necessity.

[20] Second, the State made a concerted effort to locate Proctor to no avail. The test for determining what constitutes a good faith effort is reasonableness, *Garner v. State*, 777 N.E.2d 721, 725 (Ind. 2002), and in looking at the record, the trial court did not err in ruling that the State made reasonable efforts to get Proctor to appear at trial. The police searched multiple databases to find all known addresses linked to Proctor. After doing so, the department sent out multiple officers to those locations, searched, and did their best to secure her presence. Despite these efforts, Proctor could not be located, and the State reported as much to the trial court.

Furthermore, it is undisputed that Pinkham's public defender (PD1) was present at and participated in Proctor's deposition. PD1 had the opportunity to ask questions and cross-examine Proctor during the deposition, and the record shows that he did just that.

Therefore, the trial court did not err when it determined that Proctor was unavailable and that Proctor's prior testimony had been subject to cross-examination. Consequently, it was not erroneous to admit the deposition testimony into evidence.

# III. Sufficiency of Evidence

Finally, Pinkham argues that the evidence was not sufficient to support his burglary conviction. Specifically, Pinkham claims that without Proctor's deposition testimony, a reasonable trier of fact could not possibly have convicted him based on the remainder of the State's evidence.

When reviewing the sufficiency of the evidence supporting a conviction, we must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). It is not our job to reweigh the evidence or to judge the credibility of the witnesses, and we consider any conflicting evidence most favorably to the trial court's ruling. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005).

[25] To convict Pinkham of burglary, the State was required to prove beyond a reasonable doubt that Pinkham (1) broke and entered (2) the building or structure (3) of another person (4) with the intent to commit a felony in it. I.C. § 35-43-2-1 (2014).

[26] Having already concluded that the trial court did not err by admitting Proctor's deposition testimony, we hold that the evidence could have allowed a reasonable trier of fact to find Pinkham guilty beyond a reasonable doubt.

[27] As to the first, second, and third elements, a reasonable factfinder could conclude that Pinkham broke and entered into the Taco Bell. Proctor attested that Pinkham forcibly entered the restaurant through the drive-thru window using a prybar. While surveillance footage only captured an unknown figure in all black clothing, Officer Kruse's search and discovery of the prybar, black clothing, and ski mask in Pinkham's car corroborates Proctor's testimony that Pinkham was the person who committed the breaking and entering.

[28] As to the fourth element, the search history found on the cell phone could lead a reasonable factfinder to conclude that Pinkham formed the requisite intent because he both considered robbing and actually planned to rob the Taco Bell. The deleted searches included information on how to bypass an alarm system and details about the hours and location of the Taco Bell. In fact, based on Proctor's testimony, it seemed as if the entire purpose behind the couple's trip to Vincennes from Indianapolis was to burglarize this Taco Bell. Once again, Officer Kruse's search of Pinkham's car revealed the tools that were used to

steal money from the Taco Bell safe: a reciprocating saw, saw blades, wire cutters, and a chisel. A reasonable factfinder could conclude that Pinkham had the intent to commit a felony (burglary) within the Taco Bell.

[29] In sum, the evidence is sufficient to support his conviction.

[30] The judgment of the trial court is affirmed.

May, J., and Tavitas, J., concur.